## No. 2103.

## AULTMAN & TAYLOR CO. *v.* A. C. HEFNER ET AL.

1. **WARRANTY CONTRACT.**—When a manufacturer accepts an order for his machinery which on its face asks that it be forwarded subject to warranties specified in the order, the warranties become as much a part of

the contract as are notes and a mortgage on the machinery subsequently executed by the purchaser to secure the payment of the contract price.

2. WARRANTY.—Though under such a contract the purchaser receives the machinery, and by thus making it his property loses the right to return it, if on trial it is found to be defective and not as warranted, and have his notes therefor canceled (as would be his right if he acted promptly in case of an executory contract for the purchase of machinery not seen, and not as represented by the seller), he is still protected by the warranty, and may resort to either of two remedies: (1) After accepting and running the machinery the purchaser may maintain an action for damages, in which he may recover not only a sum equal to the difference between the value of the defective machine and one of its kind not defective, but in which he may recover such amount of money as under the rules of law he would be entitled to as consequential damage. (2) If sued for the purchase money he may set up the defective quality of the thing warranted in diminution of the price agreed to be paid. The above doctrine is announced on a state of facts which negative the idea that the purchaser executed notes for the machinery and remained in possession of it after knowing its defective character, and in such manner as to waive his rights under the warranty.

3. CASES APPROVED.—Brantly v. Thomas, 22 Texas, 270, and Blythe v. Speake, 23 Texas, 429, approved.

4. NOTICE.—A manufacturer of machinery must be held to have full notice of its defects, and the want of diligence used by a purchaser thereof, who buys with warranty, in not testing it further after the execution of notes for the purchase money, given with an assurance that the seller would remedy the defects, is unimportant. The giving of collateral security to secure such notes long after their execution does not defeat the right of the maker to still rely on the warranty.

5. NOTICE—PRINCIPAL AND AGENT.—The agents of the manufacturers of machinery, who were agents and not mere dealers, sold a machine under a contract containing warranties as to its fitness for the use intended, and with a stipulation that if found to be defective the manufacturers should be notified. On being delivered to the purchaser, the machine was found defective when tested by the warranty. Thereupon notes were given for the purchase money, under an assurance from such agents that the defects would be remedied, and if other defects were discovered, and they were notified, they would communicate them to the manufacturers. *Held,* notice to such agents was notice to the principal.

6. GUARANTY.—The guarantor of the payment of a note is discharged from his guaranty by the existence of any matter growing out of the contract which entitles the maker of the note to recover from the payee a sum equal to the balance which would otherwise be due on the note.

APPEAL from Hunt. Tried below before the Hon. J. A. B. Putman.

*Montrose & Grubbs,* for appellant, on their proposition that the appellee, Hefner, could not avoid his liability by his plea of

partial failure of consideration by reason of the fraud of White and Bowser & Lemon in obtaining his signature after the machinery had been delivered in accordance with the agreement of the parties, and the same had been tested and failed to work, unless he had at least either alleged that appellant directly authorized the fraud, or ratified it with knowledge of all the facts, or that he had notified appellants thereof before the institution of this suit on March 17, 1885, cited: Rhine v. Blake et al., White & Willson's Civil Cases, section 1066; Clegg v. Galveston Hotel Company, White & Willson's Civil Cases, section 621; McAlpin v. Cassidy, 17 Texas, 449; Broughton v. Blalock, 17 Texas, 356; Mitchell v. Zimmerman, 4 Texas, 75; Walton v. Rogers, 20 Texas, 608; McKinney v. Fort, 10 Texas, 220; Prairie Farmer Company v. Taylor, 69 Illinois, 440, 18 American Reports, 622, 623, 624; The Kimball & Austin Manufacturing Company v. Vroman, 35 Michigan, 310, 24 American Reports, 549; Summers v. Vaughan, 35 Indiana, 329, 9 American Reports, 741; Day v. Pool, 52 New York, 416, 11 American Reports, 721; Mast v. Pearce, 43 American Reports, 125; Lewis v. Hubbard, 1 Lea, 436, 27 American Reports, 776; Nye v. Iowa City Alcohol Works, 51 Iowa, 129, 33 American Reports, 123.

On the proposition that Hefner should have shown diligence in testing the machinery himself, and that appellants were notified of its defects in a reasonable time, they cited Lewis v. Hubbard, 27 American Reports, 776, 777.

On the proposition that even though the agents of appellants did warrant the machinery as alleged, appellee made, executed and delivered the instruments, after the time of the delivery thereof, and had seen it fully and fairly tested, and did so with knowledge of its defects, and thereby fixed his liability, they cited: Mitchell v. Zimmerman, 4 Texas, 75; Watson v. Rogers, 20 Texas, 108; McKinney v. Fort, 10 Texas, 220; Broughton v. Blalock, 17 Texas, 356; Prairie Farmer Company v. Taylor, 69 Illinois, 440, 18 American Reports, 622; The Kimball & Austin Manufacturing Company v. Vroman, 35 Michigan, 310, 24 American Reports, 558; Summers v. Vaughan, 35 Indiana, 323, 9 American Reports, 741; Day v. Pool, 52 New York, 416, 11 American Reports, 725; Mast v. Pearce, 43 American Reports, 126; Lewis v. Hubbard, 1 Lea, 436, 27 American Reports, 776; Nye v. Iowa City Alcohol Works, 51 Iowa, 129; 33 American Reports, 122; Negley v. Lindsey, 5 American Reports, 428; 67 Pennsylvania State. 217.

*Perkins, Gilbert & Perkins,* for appellee.

STAYTON, ASSOCIATE JUSTICE. This action was brought to recover on three promissory notes, executed to the appellant, by the appellee Heffner, to secure the purchase money for machinery sold to the latter by the former, and to foreclose a chattel mortgage made to secure the notes. One of the notes was signed by the defendant Davenport, and the three notes bore indorsements which showed that the defendants, Bowser & Lemon, " for value received, waiving presentment for payment, protest, and notice thereof, guaranteed the payment of the notes at maturity or any time thereafter."

The purchase of the machinery was made through one White and Bowser & Lemon, who, under the evidence must be held to have been the agents of The Aultman & Taylor Company, which seems to have been the manufacturers of the machinery.

The contract through which the purchase was made consisted of an order signed by Hefner and directed to the appellant, which requested them to send forward the machinery, and bound him to take it and settle for it by the notes to be executed. This order was made out on a form evidently prepared by the appellant, and among other things contained warranties as to the machinery.

The machinery was forwarded by the appellant and received by the appellee, who, with one of the agents of the appellant, in accordance with the instructions sent with the machinery, directing how it was to be put up and operated, attempted to put it up, and to use it for the purposes to which the warranties relate, and it was then found that the machinery would not operate as warranted to do.

Soon after this, one of the firm of Bowser & Lemon, the agents of the appellants, came to Hefner's place and asked him to execute notes as contemplated by the order on which the machinery was sent out. This Hefner at first declined to do, for the reason that the machinery was not such as was required by the warranty. This agent, however, insisted that the machine would perform the work it was warranted to do, and stated that if White could not make it do so he would send a person from Dallas who should make the machinery operate as it was warranted to do. With the understanding and promise that this should be done, Hefner executed the notes and mortgage sued on and continued in possession of the machinery.

Neither the appellant nor any of its agents, after the notes

were executed, made any effort to have the machinery put in such condition that it would perform the work it was warranted to do, although the agents were repeatedly requested to do so. The evidence shows very clearly that the machinery, with skillful management, could not be made to do the work it was warranted to do.

In the answer of the defendant, Hefner, he set up the breach of warranty, and alleged that he had paid as much on the notes as the machinery was worth.

The order on which the machinery was sold was made in duplicate, on printed forms evidently furnished by the appellant, and one of them was left with Hefner and the other sent to the appellant. The one left with Hefner seems to have been accidentally destroyed, and in his answer notice was given to the appellant to produce the one forwarded to it.

In Hefner's answer the warranties set out in the order were substantially alleged, and in some respects his averments may have gone further than did the warranty, relying, perhaps, on conversations between him and the agent of the appellant, made about the time the notes were executed as to some matters as warranties.

The appellant, assuming that the notes and mortgage on which it had sued were the sole evidence which could be looked to to ascertain what the contract between the parties was, and assuming that the acts and declarations of its agent at the time the notes were executed were not binding upon it, and assuming that Hefner was bound to pay the full amount of the notes on retaining the machinery under the circumstances stated in the answer, raised these several questions by exceptions which were overruled. The action of the court in this ruling is assigned as error.

When the appellant accepted the order, which was made subject to the warranties contained upon its face, it became as much a part of the contract between the parties as could the notes and mortgage, had they been executed without any understanding as to anything further to be done as the consideration for them. In so far as the answer set up the warranties contained in that paper and alleged the breach, the pleading was sufficient.

The acts and declarations of the appellants' agent, at the time he took the notes and mortgage, created no new obligation, and only go to show that there was no waiver of the warranty in running the machinery after it had been tested and found to be not as it was warranted to be.

It was provided in the very face of the contract between the parties that the notes should be executed in settlement as a condition on which the warranty should attach.

It contained this clause: "It is also fully understood and agreed that if the purchaser does not make full settlement with cash or notes, as above provided, upon its delivery to him, he thereby waives all claims under this warranty." The answer setting up the facts attending the execution of the notes and mortgage were well pleaded.

At most, then, we have simply a case in which a manufacturer has sold machinery, warranting it to have certain qualities, and when well managed to be capable of performing certain work, which upon fair trial it is found that it will not do, and for the full value of which, if as warranted to be, the purchaser has executed notes.

For the purposes of this case it may be admitted that, under the facts, Hefner received the machinery; that it became his property, and that he has not now the right to return it to the seller and have his notes canceled, as would be his right if he had acted promptly in case of an executory contract to buy machinery, unseen, but represented by the seller to possess given qualities not found to exist.

The title passed to him with the warranty for his protection, and if there was a breach of that warranty he might have either of two remedies: First, after running and accepting the mamachinery he would be entitled to maintain an action for damages, in which he might recover, not only a sum equal to the difference between the value of the defective thing and one of its kind not defective, but in which he might also recover any such sum as, under the rules of law, he might be entitled to as consequential damage. Second, when sued for the purchase money he may set up the defective quality of the thing warranted in diminution of the price.

The rule was thus stated in the case of Mundel v. Steel, 8 M. & W., 858: "The rule is, that it is competent for the defendant not to set off by a procedure in the nature of a cross action the amount of damages which he has sustained by breach of the contract, but simply to defend himself by showing how much less the subject matter of the action was worth by reason of the breach of contract, and to the extent that he obtains, or is capable of obtaining, an abatement of price on that account, he must be considered as having received satisfaction for the breach of

contract." This is the effect of the decision in Brantley v. Thomas, 22 Texas, 275, and Blythe v. Speake, 23 Texas, 436.

Under the facts to which we have referred there can be no pretence that Hefner waived the warranty by remaining in possession of the property, and executing notes for it when he knew it was defective.

The appellant must be held to have had full notice of the defects in the machinery, and it is unimportant, under the terms of the contract, what diligence Hefner used in testing the machinery, after it was found not to be as warranted.

It is urged that the court erred in giving the following charge: "The jury are further charged that if a party adopt a contract made on his behalf by one purporting to act as his agent, although the latter had no authority to make it, he must adopt it in its entirety; he can not adopt a part and repudiate a part; but when he adopts such unauthorized act, with full knowledge of all the material facts, he makes such person his agent as to such act so done, and is bound by his acts and representations." This charge seems to be correct when applied to the facts of this case.

That the defendant may have given collateral security, to secure the notes sued on, long after he executed them, does not defeat his right to urge the defense which he now sets up.

Such collateral security might be enforced to obtain payment of any sum found to be due to the appellant; and the giving of collateral security, under such circumstances, if unexplained, might affect the credibility of the defendant's own evidence through which he shows the breach of warranty.

The giving of collateral security no more defeats the right of Hefner to rely on the warranty than does the execution of the notes.

The construction of that part of the agreement on which the sale was made which required notice of the defect in the machinery to be given, is not free from difficulty.

It is evident that notice of such defect given to a mere dealer in such machinery would not be sufficient.

The instrument is silent as to notice to an agent of the appellant corporation, other than an agent at its place of business in a distant State.

That Bowser & Lemon were the agents of the corporation, and not mere dealers in such machinery, from the record before us, is too clear. They controlled the negotiations for the sale and

consummated it, and in the very act of consummation received notice of the very defects which are now set up as a breach of the warranty.    They promised to have them remedied, and requested that further notice of defects, if found to exist, should be given to them, and promised to convey such notice to their principal.

Under such circumstances, it seems to us that notice to the agent was notice to the principal, and that to hold otherwise would be to sanction a fraud through which the appellee was misled by the agent.

That the paper on which the order was made contained a provision that "no person or firm selling 'Aultman & Taylor' machinery is authorized to make any written or verbal alteration, or any change whatever in the foregoing warranty" is true. But it seems to us that this does not affect the question of manner in which notice of the breach of warranty may be given.    It would seem rather to deny to agents or dealers selling the machinery the power in any manner to impose a warranty of qualities or capacities which the express warranty of the appellants did not cover.

If the machinery had been sold by a dealer who had purchased from the appellant with an agreement that the warranty embraced in the application to purchase should be understood to pass to the vendee of such seller, then notice of the defect to the appellant, under the terms of the agreement, certainly would be necessary to make the warranty binding upon it, unless the terms of that agreement were complied with.    It may be true, under the terms of the agreement, that written notice to a dealer from whom a purchase was made, and such notice contained in a registered letter properly directed to appellant's place of business and deposited to be sent by mail, whether ever received by the appellant at its place of business or not, would operate as sufficient notice to it; but if notice actual was given, in any manner, that would be enough.

The general rule of law is that notice to the agent is notice to the principal, and we find nothing in the agreement which can take this case out of that general rule.

No facts are alleged by appellant to fix upon Bowser & Lemon, as guarantors, any liability other than that to be implied from their written guaranty found on the notes.

They guaranteed the payment of the notes at maturity or at any time thereafter; *i.e.*, that the maker of the notes would pay

them at maturity, or that the guarantors, on his failure to do so, would pay them.

It would seem, therefore, that if by reason of the existence of any facts between the appellant and the maker of the notes, by which the latter becomes entitled to recover from the former a sum equal to the balance due on the notes, as for damages on breach of warranty or otherwise, that then, in contemplation of law, the notes are paid and the guaranty satisfied. .

It is very generally held that a surety may plead and prove, in his defense, any offset or counter claim which would be available to his principal. (Bayliss on Sureties and Guarantors, 408; Brandt on Suretyship and Guaranty, 203; DeColyer on Guarantees, 431.

If an original promissor can thus be discharged, we see no reason why one whose undertaking is merely collateral may not be discharged in the same manner.

In the case before us, the matters which operate as a defense to the notes guaranteed, grow out of the contract under which the notes were given, and under the procedure recognized in this State, we see no objection to giving relief to a guarantor, where the person primarily liable for the debt guaranteed is shown to have a defense growing out of the same transaction, which entitles him to a judgment, in effect, declaring that the notes guaranteed have been satisfied.

It may be that the appellants might have stated a case which would have rendered the guarantors liable on their guarantee, notwithstanding the defenses set up by the maker of the notes were good as to himself. No such facts, however, are stated.

We find no error in the judgment, and it will be affirmed.

*Affirmed.*

Opinion delivered November 26, 1886.