## The York Manufacturing Company v. Bonnell et al.

[No. 3,038. Filed May 29. 1900.]

Parties.—*Contracts.*—*Breach.*—*Partnership.*—Where a sale of machinery was made to a firm consisting of two members, and a note taken for a deferred payment, and thereafter the purchasers sold a one-third interest in the machinery and the seller took the note of the three members in renewal of the note originally given, the seller became liable to the new firm of three members for a breach of warranty of the machinery sold, and such new firm was entitled to recover on a counterclaim for the breach of the warranty in an action on the°note given by them. *pp. 669-671.*

Contracts.—*Warranty.*—*Breach.*—*Counterclaim.*—Defendants purchased an ice-machine of plaintiff under a written warranty that the machine would make four and one-half tons of ice by the use of one ton of coal. Upon the completion ·of the plant, a test run showed that the machine did not satisfy the warranty, and the purchasers refused to accept it or to pay the purchase price, whereupon plaintiff agreed that if the purchasers would pay the cash payment stipulated in the contract and execute their notes for the balance, ·it would make the plant produce the results as stated in the·original contract, and the purchasers paid the cash payment and executed their notes for the balance. In an action on the notes, defendants filed a counterclaim setting up the foregoing facts as to the warranty and test. *Held,* that a new warranty was not substituted for that contained in the original contract. *pp. 668-673.*

From the Fountain Circuit Court. *Affirmed.*

*M. W. Bruner, L. Nebeker* and *D. W. Simms*, for appellant.

*B. Crane* and *A. B. Anderson*, for appellees.

HENLEY, J.—This action was commenced by the appellant against appellees, John R. Bonnell, William B. Nash, James T. Layman, and Robert P. A. Berryman, on a promissory note. The complaint was in one paragraph. Appellees answered admitting their liability upon the note for the principal sum and interest and for attorney fees as charged in the complaint. Appellees also filed a counterclaim. Appellant's demurrer to the counterclaim was overruled. An answer in four paragraphs was filed to the counterclaim, the third paragraph being a general denial. Appellees demurred to the first, second, and fourth paragraphs of answer, and the court sustained the demurrer to the first and fourth paragraphs, and overruled it as to the second. The cause was tried by a jury and a verdict returned in favor of appellees for $127.50 on the counterclaim; and over appellant's motion for a new trial judgment was rendered in favor of appellees for that amount; the result of the action being that appellant's entire claim was defeated, and appellees recovered the amount of the judgment in addition. Appellant has assigned as error the action of the lower court in overruling the demurrer to the counterclaim; in sustaining the demurrer to the first paragraph of the answer to the counterclaim, in sustaining the demurrer to the fourth paragraph of the answer to the counterclaim, and in overruling the motion for a new trial. All the alleged errors assigned are properly presented by the record.

The counterclaim is based upon an alleged breach of warranty in the sale of certain machinery for the manufacture of artificial ice. The sale was made to appellees, Bonnell, Nash, and Layman. Appellee Berryman, who was not a party to the original contract of purchase, afterward bought an interest in the ice plant and business, and, as is

alleged in the counterclaim, there was assigned to him at the time of his said purchase an interest in all contracts which appellees, Bonnell, Nash, and Layman had with appellant. Appellees' counterclaim was, in substance, that appellant sold to appellees, Bonnell, Nash and Layman, a machine for making ice at an agreed price of $11,000, and by written warranty contracted that said machine would make four and one-half tons to five tons of ice by the use of one ton of coal. Upon the completion of the plant, a test run was to be made to demonstrate that it complied with the contract. The test run showed that the machine did not satisfy the warranty, and the purchasers refused to accept it, or to pay the purchase price. Appellant then agreed that if the purchasers would pay the cash payment stipulated in the contract, and execute their notes for the balance, appellant would make the plant produce the results as stated in the original contract; and thereupon said purchasers paid the cash payment, and executed their notes for the balance. It is then alleged that soon after said cash payment was made, and the notes executed for the balance, appellees, Bonnell and Layman, with the knowledge and consent of appellee, Nash, sold a one-third interest in said machine and plant, and sold and assigned a one-third interest in said contract with appellant to appellee Berryman; and that after said sale to Berryman, appellant took the note sued on in this action, executed by all the appellees, in renewal of one of the notes given by appellees, Bonnell, Nash and Layman. The breach of the warranty, with the resulting damage, is alleged at great length and particularity.

Counsel for appellant contend that appellee Berryman is not a party to the contract and warranty; that he has no right to set up a breach of this contract as a cause of action against appellant; that only appellees Bonnell, Nash, and Layman can claim the benefit of said contract, and that the counterclaim, being joint as to all the appellees, and being bad as to Berryman, it is bad as to all the appellees. If the

counterclaim is bad as to appellee Berryman, the position assumed by counsel is correct. We think appellee Berryman had an equal right with the other appellees to the benefit of the contract of warranty. He was a principal upon the note to appellant representing a debt growing out of the same contract, which he claims the right to enforce as against appellant.

Our Supreme Court have held that a counterclaim closely corresponds to the cross-bill of the old chancery practice. *Standley* v. *Northwestern, etc., Ins. Co.*, 95 Ind. 254; *Douthitt* v. *Smith*, 69 Ind. 463.

The averments of the counterclaim bring appellee Berryman within the equitable rule announced in *Brewer* v. *Norcross*, 17 N. J. Eq. 219, where it is said: "Wherever it is necessary to effect a clear equity, or to prevent irremediable injustice, the set-off will be allowed, though the debts are not mutual." And within the rule announced in the following Indiana cases: *Carter* v. *Compton*, 79 Ind. 37; *Keightley* v. *Walls*, 27 Ind. 384; *Cosgrove* v. *Cosby*, 86 Ind. 511. Also see *Lindsay* v. *Jackson*, 2 Paige 581.

The conclusion reached is also sustained by the reasoning in the case of *Sinker, Davis & Co.* v. *Kidder*, 123 Ind. 528. This was an action brought by Kidder against Sinker, Davis & Co. for damages for breach of warranty in the sale of certain machinery. It appeared that the machinery was sold and delivered to and contract of sale made with the firm of Kidder Bros. Wright L. Kidder sold and transferred his interest in the firm to his brother, Willard Kidder, who commenced the action. It was urged by counsel for appellant that appellee could not maintain the action for breach of the warranty, for the reason that the warranty was made to Kidder Bros., and that a warranty of personal property could not be transferred to a person not a party to the contract. In disposing of this question, the Supreme Court say in regard to the relationship of members of a firm to the contracts of a firm: "But let us consider the question

a little further. If the firm is the entity, and not the members thereof, if the firm of Kidder Bros. had been composed of three members when the contract was made, and one of the members thereof had dropped out, and the business continued without any change in the firm name, then there could be no question but that the appellee would have been liable to the firm composed of two members, and if this is to follow, then if the appellee had continued to carry on business in the firm name after he bought Wright L. Kidder's interest, the entity of Kidder Bros. would still have been in existence, and that being true, the firm could have maintained the action the same as if a member of the firm had not dropped out. This conclusion must follow if the members of a firm are not parties to contracts made in the firm name."

It is further argued that the original warranty ceased to exist when the plant was accepted and the payments arranged, and that nothing was left but the verbal warranty made at that time. The averments of the counterclaim applicable to this question are as follows: "That at the expiration of said trial run plaintiff admitted and conceded that it took more than one ton of coal to make four and one-half to five tons of ice, and promised and assured these defendants that if they would pay the cash payment, and execute the notes required, and accept the plant and machine, it would make the machine and plant produce four and one-half to five tons of ice to one ton of coal, and would make it produce the required results as stipulated in said original contract; and if the plant and machine did not produce four and one-half to five tons of ice to each ton of coal used, the plaintiff would make it all right and reimburse these defendants." Under the above averments a new warranty was not substituted for that contained in the original contract. It was simply a reaffirmance of the original warranty. The case of *Aultman, etc., Co.* v. *Heffner*, 67 Tex. 54, 2 S. W. 861, is in point. In the case re-

ferred to, the supreme court of Texas say: "The agents of the appellants came to Hefner's place and asked him to execute notes as contemplated by the order on which the machinery was sent out. This Hefner at first declined to do, for the reason that the machinery was not such as was required by the warranty. This agent, however, insisted that the machine would perform the work it was warranted to do, and stated that if White could not make it do so he would send a person from Dallas who should make the machinery operate as it was warranted to do. With the understanding and promise that this should be done, Hefner executed the notes and mortgage sued on and continued in the possession of the machinery. * * * The acts and declarations of the appellants' agent, at the time he took the notes and mortgage, created no new obligation, and only go to show that there was no waiver of the warranty in running the machinery after it had been tested and found to be not as it was warranted to be." The sale of the machine did not bar appellee's right of action for a breach of the warranty. The lower court did not err in overruling the demurrer to the counterclaim.

It is next insisted that the lower court erred in sustaining appellees' demurrer to the first and fourth paragraphs of answer to the counterclaim. Much of what we have said in disposing of the question as to the sufficiency of the counterclaim is applicable to the questions raised upon the demurrer to the answers. Appellees might have purchased the machine, and paid the full purchase price in cash, or given their note in payment. It does not matter how the payment may have been made, nor does it matter if the note given in payment has been renewed. If there has been a breach of the warranty under which the machine was sold, the fact that the purchase price has been paid does not amount to a waiver of the right to an action for such breach. Nor do the facts averred in the fourth paragraph of answer amount to an estoppel; they do not show fraud, or conduct

South Bend, etc., Co. *v.* Geidie.

amounting to fraud, upon the part of appellees, and there can be no estoppel by inference. *Tinsley* v. *Fruits*, 20 Ind. App. 534, and cases cited.

It is complained that the court erred in refusing to give certain instructions to the jury asked by appellant. We have carefully examined the instructions given by the court. They fully and fairly cover the issues made and the evidence admissible thereunder. There was no error in refusing the instructions asked by appellant. The evidence upon all material facts supports the judgment. We find no error for which the judgment should be reversed. Judgment affirmed.