PLANTERS' COTTON OIL CO. v. WHITES-
BORO COTTON OIL CO.

(Court of Civil Appeals of Texas. Dallas.
March 9, 1912. Rehearing Denied
March 30, 1912.)

1. CORPORATIONS (§ 503*)—VENUE—ACTION
ON CONTRACT — "CAUSE OF ACTION" —
"AROSE."

Plaintiff, from its office in G. county, by telephone, agreed with defendant's manager at its office in F. county to sell cotton seed delivered f. o. b. in G. county, payable in F. county by draft with bill of lading attached, the seller to pay the freight and to sell cotton seed from other points and divert it to F. county. Rev. St. 1895, art. 1194, subd. 23, provides that a suit against a private corporation may be commenced in any county in which the cause of action arose. *Held*, that the "cause of action" comprehended the agreement between the parties, its performance by one, its breach by the other, and that the acts to be done under the agreement constituted a performance in F. county, so that no cause of action "arose" in G. county; and hence that the defendant was entitled to a change of venue.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1935–1939, 1942–1946; Dec. Dig. § 503.*

For other definitions, see Words and Phrases, vol. 2, pp. 1015–1019; vol. 8, p. 7598.]

2. SALES (§ 179*)—ACTION FOR PRICE—DE-
FENSES—INFERIOR QUALITY.

A buyer who unloads and accepts goods without knowledge of their condition at the time of taking possession may defend the seller's action for the price by setting out such inferior quality.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 456–468; Dec. Dig. § 179.*]

Appeal from Grayson County Court; J. Q. Adamson, Judge.

Action by the Whitesboro Cotton Oil Company against the Planters' Cotton Oil Company. Judgment for plaintiff, and defendant appeals. Reversed and set aside, with directions to change the venue.

J. G. McGrady, of Altura, for appellant. Abney & Hassell, of Sherman, for appellee.

RASBURY, J. This is a suit by Whitesboro Cotton Oil Company against Planters' Cotton Oil Company, a private corporation, filed in the county court of Grayson county to recover $609.44, alleged to be the price agreed to be paid by the Planters' Cotton Oil Company for certain cotton seed delivered f. o. b. the cars at Whitesboro by said Whitesboro Cotton Oil Company. It was also alleged by plaintiff that defendant had agreed, in writing, to pay said sum at Whitesboro, Tex., or, if plaintiff was in that respect mistaken, that defendant had contracted verbally to receive and accept said seed at Whitesboro f. o. b. cars; and hence plaintiff's cause of action, or a part thereof, arose in Grayson county. Defendant filed statutory plea of privilege to be sued in Fannin county, the county of its domicile, where it has its office and place of business, denying specifically that it promised, in writing, to pay said debt in Grayson county, or that the cause of action, or any part thereof, arose in said county. In view of the disposition that will be made of this case, it will be unnecessary to refer further to the pleadings, except in the specific instance hereinafter mentioned. The cause, including the plea of privilege, was tried by jury, which found against defendant on all issues.

The facts necessary for the disposition of this case are substantially as follows: On and subsequent to December 9, 1909, appellant purchased from appellee approximately 500 tons of cotton seed then in the mill of appellee at Whitesboro, in Grayson county, Tex., as well as all other cotton seed that appellee might purchase at other points and divert to appellant at Bonham before appellant had closed down its mill for the season. Appellant agreed to pay $30 per ton for the seed f. o. b. the cars at Whitesboro. On the seed not loaded from appellee's mill in Whitesboro, the basis of sale and settlement was $30 per ton f. o. b. the cars Whitesboro; and if the freight on any diverted car exceeded the rate from Whitesboro to Bonham appellee agreed to pay the difference. Appellee was to draw drafts with bill of lading attached for the price of the seeds as shipped out, and same were to be paid by appellant on presentation in Bonham, Tex. The seed described in appellee's petition were delivered in certain diverted cars, and because appellee did not have the weights the bills of lading were sent to appellant with request for remittance, instead of drawing draft in the usual way. The seed, the price of which is sued for in this case, were unloaded by appellant on arrival in Bonham, and part of them, according to appellant's testimony, were consumed in his mill, when it was discovered, as appellant claims, though not found by the jury, that they were inferior in quality, and whereupon appellant refused to use the remaining seed, and declined to pay for them under the contract. Pending adjustment of the controversy, the parties agreed, in writing.

that appellee should sell the remaining seed for the best obtainable price, without waiving his claim that the seed met the demands of the contract. Appellee finally sold the seed to appellant for $15 per ton, which was the best obtainable price. The jury found against appellant $30 per ton. The contract to sell the seed, on the one side, and purchase, on the other, was made by telephonic communication between S. R. Cockrill, manager for appellee, and A. R. Scarborough, manager for appellant, appellee's manager being in his office in Whitesboro at the time, and appellant's manager at same time being in his office in Bonham. Other facts were, of course, proven, and a sharp conflict developed, relating to the quality of the seed and as to whether the particular seed in controversy was delivered under the original contract, or under a special arrangement; but, since the jury adopted appellee's theory, we deem it unnecessary to further discuss the evidence; and, besides, such discussion will have no bearing on the disposition we will make of the case.

[1] Appellant's first and second assignments of error complain of the action of the court in overruling its plea of privilege. Subdivision 23 of article 1194, prescribing the venue of suits against private corporations, contains the provision, among others, that the suit "may be commenced in any county in which the cause of action, or a part thereof, arose;" and it is under this provision of the statutes that appellee maintains its right to sue appellant in Grayson county. While an agreement in writing to pay the debt in Grayson county was alleged, no proof thereof was made; and it was admitted that appellee had its domicile in Fannin county, and had no agent in Grayson county.

There have been a number of constructions of this statute; but we are unable to find any decision that parallels the instant case. Fairly stated, appellant's manager, in his office in Fannin county, agreed over the telephone to purchase the product of appellee and pay therefor $30 per ton in Bonham, and appellee's manager, in his office in Grayson county, agreed, also over the telephone, to deliver the product on the cars in Whitesboro and collect the price in Bonham by bank draft with bill of lading attached; appellant to pay the freight from Whitesboro to Bonham. Many of the cases hold, under the above article of the statutes, that suit may be brought in the county where the contract was *made*; but it is clear that the contract in this case was not made in Grayson county. Appellee offered to sell from its office in Grayson county, and appellant, in its office in Fannin county, accepted the offer and agreed to pay the price in Fannin county; and if it can be said that the contract was made in either county it is more nearly correct to say it was made in Fannin county, for it was in that county that the

offer was received and accepted, and the agreement consummated. The fact that it was appellee's duty to load the seed in Whitesboro furnishes no reason, in our opinion, for maintaining the jurisdiction in the county court of Grayson county. Under the agreement, appellee was bound to load the cars in Whitesboro and secure bill of lading from the railway company, and present that with draft to appellant in Bonham, before it was entitled to receive its money. Clearly those acts amounted to performance in Fannin county, for, until appellant had paid the draft and received the bill of lading, he could not secure possession of the seed; and it is as equally clear that until he paid the draft and received the bill of lading appellee retained control of the seed. Then can it be said that the cause of action, or any part thereof, "arose" in Grayson county? Broadly speaking, "cause of action" comprehends the agreement between the parties, its performance by one and its breach by the other, and it may be, in line with a number of adjudicated cases, that if the parties had actually been within the boundaries of Grayson county the county court of that county could have properly tried the case, because, the agreement having been made in that county, and it having been held by our courts that the term "cause of action" includes the agreement, its performance and its breach, it could consistently be said that it "arose" in Grayson county; but the evidence is undisputed that appellant did not agree to perform its part of the agreement in Grayson county—in fact, performance in Grayson county, under the agreement, was impossible, and it certainly cannot be asserted that the contract "arose" in Grayson county in the sense that the parties made the agreement in that county, and it follows, in our opinion, that the court erred in overruling appellant's plea of privilege. Callendar, Holder & Co. v. Short, 34 Tex. Civ. App. 364, 78 S. W. 366, and cases cited.

[2] We find no merit in the other assignments of error, except the fifth. By its supplemental petition, appellee pleaded that appellant had unloaded the seed and used part of them, which in law and by custom of merchants constituted an acceptance thereof; that it was the duty of appellant to examine into the condition of the seed before unloading and taking possession of the same; and that failure to so do constituted acceptance in fact and in law. While the court charged affirmatively on both sides of the main controversy, it did not charge on the issue thus raised by appellee's supplemental petition and the facts proven on that issue, notwithstanding appellant requested the issue to be presented by its special charge No. 4, as presented under its fifth assignment of error. Accepting the seed and unloading them without knowledge of their alleged inferior quality would not prevent appellant from subsequently defending the suit on the ground of

their inferiority, if he did not know their condition at the time he took possession thereof, and proof was offered which authorized the submission of the issue raised by the requested charge.    Hayden et al. v. Houghton et al., 24 S. W. 803; Houchins v. Williams Bros., 25 S. W. 730; Aultman v. Hefner, 67 Tex. 54, 2 S. W. 861; Tripis et al. v. Gamble et al., 28 S. W. 244; Bryan Cotton Seed Oil Mill v. Fuller, 57 S. W. 924.

As above indicated, we are of opinion, in view of the facts disclosed by the record, that the venue of the suit was improperly retained by the county court of Grayson county, and accordingly the judgment of the lower court is reversed and set aside, and, in compliance with article 1194c of the Revised Statutes, said court is directed to enter judgment changing the venue therein to the county court of Fannin county; and, further, the clerk of the county court of Grayson county is directed to prepare a transcript of said cause and transmit the same, together with the original court papers, to the county court of Fannin county.