## WICHITA SCHOOL SUPPLY CO. v. MUTSCHLER BROS. CO.
### (No. 12073.)

Court of Civil Appeals of Texas. Fort Worth. Jan. 26, 1929.

Rehearing Denied March 2, 1929.

Smoot & Smoot, of Wichita Falls, for appellants.

Bonner, Bonner & Fryer, of Wichita Falls, for appellee.

CONNER, C. J. The appellee, Mutschler Bros. Company, a foreign corporation, doing business in the county of Elkhart, Indiana, instituted this suit against the Wichita School Supply Company, and others not necessary to name, on a trade acceptance given by the Wichita School Supply Company, on July 20, 1926, for the sum of $572. The instrument shows on its face that it was given for goods purchased from the plaintiff.

The defendant in the lower court, appellant here, duly pleaded as a defense a failure of consideration. It was alleged, in substance, that the obligation was given and the debt incurred for certain furniture for the Archer county, Tex., courthouse, which was warranted to be of fumed oak finish, and to agree to finish, color, and quality with a sample furnished; that it was purchased to match the remainder of such furnishings of the court-

house, as was well known to plaintiff; that it was purchased as a "show job" for defendant to be used as a sample to show to prospective customers, also known to plaintiff; that plaintiff had failed to supply furniture of the kind, quality, and finish ordered, and that the furniture, ordered by defendant did not agree with the sample as warranted; that it was of a finish and color of such inferior workmanship that it was useless to the defendant, and the same was tendered back to plaintiff, etc.

The plaintiff answered by a general demurrer and a general denial and specially to the effect that the trade acceptance upon which the suit was founded had been executed more than five months after the receipt by defendant of the goods, and more than five months after the defendant had made delivery thereof to the customer, Archer county, and had received the full consideration from said county therefor; that defendant had ample opportunity, before executing the trade acceptance, to inspect said goods and ascertain whether or not they were of the kind, color, and finish plaintiff had agreed to furnish; that, despite this fact, defendant made no complaint to plaintiff or its agent until the filing of its answer in this case; that the execution of said trade acceptance by defendant constituted a ratification of the contract of sale of said goods, and defendants "thereby have estopped themselves from pleading or proving failure of the consideration." The plaintiffs further pleaded by way of a trial amendment the facts set forth in their plea of estoppel, and urged that thereby the defendant had waived the defects set up by it.

After the introduction of the testimony, the court gave to the jury which had been impaneled to try the case a peremptory instruction to find for the plaintiff, and, on a verdict in compliance with said instruction, entered judgment for the plaintiff, as prayed for, to all of which the defendant excepted and duly prosecutes this appeal.

The plaintiff introduced the trade acceptance declared upon, which was in form and legal effect as alleged.

The statement of facts has been carefully examined, and the evidence in behalf of appellant was unquestionably to the effect that appellant was engaged in the business of furnishing courthouses, banks, schools, churches, city auditoriums, and other establishments of similar character with furniture over the states of Texas and Oklahoma, and that during the course of its business it contracted with Archer county to furnish its courthouse; that in fulfilling the contract appellant ordered from a number of manufacturers, including the appellee, the order from appellee being for certain tables for which appellee had charged the sum covered by the acceptance; that the furniture was ordered with the intention on appellant's part of making it a show job; that the furniture ordered of ap-

pellee was to accord with a sample furnished; that, upon the receipt of the furniture, appellant's "set up man" uncrated it and placed it in the Archer county courthouse, where it has remained to the time of the trial; that the furniture in fact did not match the other furnishings in the courthouse, did not have a fumed oak finish, or agree in color with the sample or other furniture, and later became rough on the surface, cracked, and showed faults of an improper finish.

Mr. G. W. Smith, one of the defendants, testified, among other things, that:

"In connection with our work, we have occasion to have sample jobs in different portions of our territory to show our customers; we do, because we have many parties that come in from different parts of the state, and from different states to see us to get our figures, and also to see our work, and judge our ability to carry out plans and specifications for equipping court houses, more especially, that than anything else. They are most careful that all of the wood work be matched, and the finishings match, and we always use our best ability to make that so. Our office is here in Wichita Falls, and this being the trade center you might say, for our trade, and this job being near Wichita Falls, we were in hopes, and in fact, did make that a point, in order to get that business, we made a special effort to absolutely fulfill the plans and specifications and have everything to match. We intended to use that as a sample job. * * * It is not practical in order to fill the order to buy all furniture from the same people. We get it all to match by furnishing wood blocks the color of the wood work of the building that the furniture was to go in. In order to get the proper appearance throughout it is necessary that the different articles of furniture shipped from different factories should be of substantially the same color and finish; and it is necessary according to our bid we, you see, guarantee it to be that. I ordered the tables from Mutschler Bros. at Napanee, Indiana, the plaintiffs in this case. We gave them instructions with reference to how they should construct and finish the furniture the tables—we certainly did, gave them the same instructions that we had, the same that we gave to the Stafford people who were to furnish the Judge's bench."

It appears that on December 9, 1925, appellant wrote the appellee company requesting shipments of tables ordered at their earliest convenience, and stated that "we are more than anxious to have them installed in the Archer County court house so we can show them to other county commissioners who are building court houses in the Wichita Falls trade territory."

On the 8th day of February, 1926, the commissioners' court of Archer county issued its warrant in favor of appellant for the sum of

$6,936.42 "for furniture." This warrant was duly paid to appellant and covered the full contract price for the furnishing of the Archer county courthouse, and the evidence is silent as to what, if any, complaint has ever been made by the county or any of its officers of the defects in the tables and other furniture, as pointed out by appellant.

On February 24, 1926, appellant wrote the appellee company, complaining of the finish and color of the tables received, and stated:

"We want this to be a show job and would like to hear from you at your earliest convenience telling us just what to do with the tables. As a suggestion we believe the cheapest way to refinish them would be to send them back to the factory as it is hardly possible to remove varnish down here and refinish so it will look good.

"Trusting we shall hear from you at once, as we have several court house jobs coming up during the next months, and would like to have this job so we could show it to our buyers when they come to Wichita Falls to see our lines."

On November 19, 1926, appellant wrote to appellee, in reply to a letter suggesting a discount, that:

"We are not wanting to compromise. You have your choice of furnishing the table in the color that the other factories made in following our instructions or pay us the difference. When we put out a bunch of equipment, we want it to look at least respectful, and we can't say that the color of the tables are satisfactory. If you are willing to deduct the freight charges on the shipment of the tables to us, and return to the factory, we are ready to make settlement, or we are ready to make settlement when the tables are shipped freight prepaid, in the correct color and finish. Upon receipt of the tables we ordered we will return the tables we now have."

On March 14, 1927, appellant wrote to appellee the following letter, omitting formal parts:

"Your representative was here last week and went out to inspect the furniture installed in the Archer County court house and stated to us on his return that he found our contention that it did not conform to sample or match up with the remainder of the furniture was correct.

"We could not talk cash settlement by knocking off part of the purchase price, as we did not think that was treating Archer County right, and this was put in as a sample job and our competitors are using it against us. We have already lost business through the fact that it did not match up, and we feel that it would injure both you and ourselves to have it said that we fell short of requirements and were forced to make a refund on that account. These people are our friends and customers, and we feel personally obligated to see that they have properly matched furniture to go

into their new court house, and we certainly do not want competitors pointing out that we are so careless with the orders intrusted to us that we do not even match up the furniture. We are therefore writing to ask that you replace this furniture with properly matched and finished furniture in accordance with your sales contract. Just as soon as this is done, we will pay for it in full; and to insure you that this will be done, we will furnish you an acceptance surety bond. If you can not do this, you are advised that the furniture is subject to your orders and we are placing another order with other parties for furniture to replace it. We ask an immediate reply."

■ As we view this case, the issue of estoppel, tendered by appellee, as distinguished from the plea of waiver, is not presented by the evidence. We think the controlling question presented for our consideration is whether the evidence shows that appellant, as a matter of law, waived its right to set up the plaintiff's breach of contract, as well as a breach of implied warranty in failing to supply the furniture as ordered. As we view the evidence, we think the court erred in giving the peremptory instruction and in refusing a special issue requested by appellant submitting the question of waiver to the jury. There seems to be no dispute of the fact that the furniture was ordered from a sample with instructions that it should match the other furniture in the courthouse; that appellee was fully informed that one of the purposes in view on the part of appellant was that it should be a show job to further the interests of its business, which was supplying furniture of the kind to others in the trade territory. It also seems to be undisputed that the furniture as actually delivered by appellee did not match in color or finish as ordered; all of which appellee was from time to time notified and requested to remedy. The facts most strongly relied upon as establishing a waiver on the part of appellant are that the furniture was delivered to the county with no protest on the part of the county, and that the county had subsequently paid to appellant the full contract price of the furniture. One of the witnesses for appellant, however, testified that upon receipt of the tables they were merely set up in the courthouse as the most convenient place. We find no evidence that the county authorities after an examination expressed themselves as entirely satisfied, but, even though the county may have been satisfied and willing to pay for the furniture actually set up, one of the purposes of appellants, and an important one, perhaps, was that its contract with the county should be, as stated, a "show job," calculated to promote an increase in the business. The fact of the county's payment, so strongly relied upon, is not we think, conclusive. The evidence shows that appellant, in entering into the contract with the county, in express terms warranted

that the finishings should match and be of the quality and finish as ordered, and there is no express testimony to the effect that the county may not still be relying upon appellant's warranty. The charge for the tables furnished by appellee was but a small part of the entire bill, and it possibly might be inferred by a jury that the county paid the entire sum, trusting that appellant would be successful in its efforts to remedy the apparent defects. We are of the further opinion that the fact that appellant forwarded to appellee its trade acceptance does not, under all the circumstances, constitute conclusive evidence that appellant had waived the defects complained of. The letter, written to the appellee company at and about the time the trade acceptance was forwarded, reiterated appellant's objections, and indicated, as a jury might reasonably infer, a willingness to trust appellee to yet make good its implied warranty to supply furniture as ordered.

In this state the rule is well settled that, to authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusions to be drawn from it. See Lee v. Ry. Co., 89 Tex. 588, 36 S. W. 63; Williams v. Daniels (Tex. Civ. App.) 4 S.W.(2d) 190. It is also well established that the question of waiver is mainly a question of intention which lies at the foundation of the doctrine. It is stated in 40 Cyc. p. 261, that:

"Waiver must be manifest in some unequivocal manner, and to operate as such it must in all cases be intentional. There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby. Since the intent is an operation of the mind it should be proven and found as a fact, and is rarely to be inferred as a matter of law. An intention to make the waiver claimed should clearly be made to appear by the evidence; and the best evidence of intention is to be found in the language used by the parties. The true inquiry is what was said or written, and whether what was said indicated the alleged intention."

On page 269 the author again says:

"The burden is upon the party claiming the waiver to prove it by such evidence as does not leave the matter doubtful or uncertain but he is only required to prove it by the preponderance of evidence, as in other civil actions."

In the case of Aultman & Taylor Co. v. Hefner, 67 Tex. 54, 2 S. W. 861, a purchase money note was executed for certain machinery sold on a warranty. In a suit on the note, the purchaser sought to defend on the grounds that the machinery was not as warranted, and there was a failure of consideration, and the seller replied that the receiving and retaining of the property and the execution of the notes therefor waived the warranty. In passing on the question, the Supreme Court said:

"Under the facts to which we have referred there can be no pretense that Hefner [buyer] waived the warranty by remaining in possession of the property, and executing notes for it when he knew it was defective."

In the case of Campion v. Marston, 99 Me. 410, 59 A. 548, the Supreme Court of Maine held that the fact that a person inspected and received an article would not as a matter of law be conclusive evidence that they waived any objection to it, but would merely be evidence of that fact to be taken for what it was worth. In the course of its opinion that court said:

"These circumstances may be evidence. and even strong evidence, that they accepted the ice bargained for, and in full satisfaction of the contract of sale, including all that good faith demanded of the plaintiff; but the circumstances do not in themselves constitute, as a matter of law, an acceptance in satisfaction or waiver of the plaintiff's promise that the ice was merchantable. * * * Whether they did in fact take the ice as full satisfaction of the contract of sale, and thus release the plaintiff from that obligation, was a question of fact for the jury."

See, also, Morse v. Moore, 83 Me. 473, 22 A. 362, 13 L. R. A. 224, 23 Am. St. Rep. 783.

In this case we think the fact that the furniture was received, that the county paid appellant the contract price therefor, that thus far the county does not appear to have complained, and that appellant gave its trade acceptance, are all facts tending to show the waiver claimed, but we do not think they are conclusive. Our statutes in express terms give the obligor in a written instrument the right to plead failure of consideration, and this has been held not to vary the terms of a positive written obligation to pay. Martin v. Cummer Mfg. Co. (Tex. Com. App.) 272 S. W. 771; Red Oak Electric Gin Co. v. Waxahachie National Bank (Tex. Civ. App.) 279 S. W. 884. Such right is not lost or waived by retention of the article. Dunlap Hdw. Co. v. Elmberg (Tex. Civ. App.) 252 S. W. 1098, affirmed in (Tex. Com. App.) 267 S. W. 258.

We conclude finally that, as stated, the court erred in giving a peremptory instruction and in refusing to submit the issues to the jury. The judgment will accordingly be reversed, and the cause remanded