## M. S. KAPLAN CO. v. WILEY.

### No. 3473.

Court of Civil Appeals of Texas. Amarillo.
Oct. 29, 1930.

Rehearing Denied Dec. 10, 1930.

Dorenfield, Foster & Fullingim, of Amarillo, for appellant.

J. B. Clark, of Shamrock, and Lewright & Engledow, of Pampa, for appellee.

HALL, C. J.

The appellant, M. S. Kaplan Company, a corporation, instituted this suit in the district court of Wheeler county, Tex., against the appellee, H. M. Wiley, to recover the sum of $2,658.50 principal, with interest and attorneys' fees, evidenced by three past-due promissory notes numbered 1, 2, and 3, executed by the appellee and payable to appellant.

The appellee answered by general demurrer, general denial, and in addition alleged that about May 15, 1929, he desired to purchase approximately six miles of pipe or tubing. That appellant, by its agent, exhibited to him sample pieces of new pipe and advised him that appellant had a large quantity of pipe or tubing of the same character and quality of the sample and represented that, if he would purchase the pipe desired from appellant, he would receive the same grade and quality of the samples exhibited. That believing and relying on such representations, he purchased approximately six miles of pipe for the sum of $4,317. That it was provided in the contract that appellant would ship the pipe to appellee and send the bill of lading for each car to the Citizens' State Bank of Wheeler at Wheeler, Tex., with a draft attached for one-half the purchase price of the car and a note for the balance, payable sixty days after date, appellee to pay the draft, execute the note, and receive the bill of lading and car of pipe. That about May 28th thereafter, the bank received a bill of lading for one car of said pipe, with draft attached for $1,127.40 and a note for the same amount to be executed by appellee. That he paid the draft, executed the note, and received the bill of lading. That about June 22, 1929, the bank received separate bills of lading for two more cars of pipe, each with draft and note attached, one for $770.05 and a note for the same amount, the other draft for $761.05 and a note for a like amount. That appellee paid said drafts, executed said notes, and received the bills of lading for said two cars of pipe. That the three cars of pipe arrived and were unloaded, after which appellee discovered that the pipe was not new pipe and was not of the quality and character purchased, but was lighter in weight, old, worn, secondhand pipe, rusty and pitted, with holes, both on the inside and outside. That he immediately, on discovering the condition and quality of the pipe, notified the appellant thereof and demanded that it refund his money, return his notes, and take the pipe, all of which appellant refused to do.

That the value of the three cars of pipe received by appellee, for which the notes sued on were given as part payment, did not exceed $2,500. That the consideration for the notes wholly failed, as appellee, before re-

ceiving the pipe, paid appellant $2,658.50 in cash on the drafts, which was $158.50 more than the reasonable value of the pipe appellee received.

Appellee's answer was duly verified and sought a recovery of $158.50 and the cancellation of his notes.

The appellant, in reply to appellee's answer, alleged that about May 15, 1929, it sold appellee 26,475 feet and 6 inches of 4-inch pipe at the agreed price of 19½ cents per foot and 5,441 feet and 6 inches of 3¼ inch pipe at the agreed price of 15 cents per foot, aggregating $5,978.86 for all the pipe. That about May 28th thereafter it shipped to appellee pipe which, at the agreed price, amounted to $2,254.80. That appellee paid the draft attached to the bill of lading for $1,127.40 and executed note No. 1 sued on for an equal amount. That about June 10, 1929, appellant shipped a car of said pipe amounting, at the agreed price, to $1,978.16; that bill of lading with draft attached for $989.08 and a note for like amount to be executed by appellee were sent to the bank; that thereafter about June 22d, by agreement of the parties, the draft was reduced to the sum of $770.05 and note No. 2 sued on was reduced to a like amount. That the draft so reduced was paid and the note so reduced was executed by appellee. That on June 7th, appellant shipped a car of said pipe, amounting at the agreed price to $1,745.90; that bill of lading with draft attached for $872.95 and note for the same sum were sent to said bank and by agreement of the parties the draft was reduced from $872.95 to $761.05 and paid by the appellee, and note No. 3 sued on was reduced to a like amount and executed by appellee.

That appellee did not pay any of the drafts drawn on him nor execute any of the notes sued on until after a complete adjustment between appellant and appellee relative to the quality of the pipe had been made. That before appellee paid any of said drafts or executed any of said notes, appellant, by way of adjustment, settlement, and compromise for any defective pipe, agreed with appellee that he should have a reduction of $661.86 on the sale price of the pipe. That after an agreement had been reached on the reduction and the adjustment of the differences concerning the value and quality of the pipe, the defendant paid the drafts and executed the notes sued on. That by reason thereof all differences between the parties concerning the kind and quality of pipe was settled, compromised, and adjusted. That this settlement was made about June 21, 1929, at which time it was agreed that the appellee would accept a credit of 2½ cents per foot on the 4-inch pipe in full settlement of all claims for any deficiency in any of the pipe, and that it was in compliance with this agreement and settlement that the drafts and notes Nos. 2 and 3 were reduced.

The appellant alleges that, if it is mistaken as to the settlement and compromise, the amount of the tubing sold and delivered, after allowing the deduction of $661.86, was reasonably worth the sum of $5,317.

The appellee, in his first supplemental answer, replying to appellant's first supplemental petition, alleged that at the time of the execution of notes Nos. 2 and 3 sued on, the last two cars of pipe shipped had arrived at destination. That he had examined said two cars of pipe as best he could while loaded, and discovered that some of the pipe was not of the character and grade purchased by him, but it was impossible for him to ascertain while the pipe was on the cars the amount of the pipe that did not come up to the grade of the pipe purchased. That before paying the drafts sent to the bank and executing the notes sued on, he notified appellant that the pipe in the two cars was not of the kind and character purchased and would not be accepted. That appellant assured him that the pipe in the two cars was of the grade and character purchased. That the defective pipe which he had seen was new and unused pipe, but rusty and dirty from having been exposed to the weather in appellant's yards at Chicago. That there might be a few joints of old pipe which had been loaded into the two cars by mistake, but that practically all of it was unused and of the grade and character purchased. That on account of the pipe being rusty, it might be necessary to clean and paint it, and, if appellee would accept the pipe, that the reduction mentioned in appellant's supplemental petition would be made in the price. That upon the representations of appellant that the pipe was all new and unused and it would only need cleaning and painting, the appellee, believing and relying upon said representations, accepted the proposition and executed the notes Nos. 2 and 3 sued on and paid the two drafts as reduced. That upon unloading said two cars of pipe, appellee discovered that the representations that said pipe was new and unused and only rusty and dirty were untrue. That practically all of the pipe contained in said two cars was old, used, secondhand pipe and not of the grade represented. That such representations of appellant were fraudulently made for the purpose of inducing the defendant to accept the pipe, pay the drafts, and execute notes Nos. 2 and 3 sued on. That but for the false and fraudulent representations, the appellee would not have accepted the pipe, paid the two drafts, and executed said notes 2 and 3.

In a second supplemental petition, the appellant pleaded general denial.

In response to special issues submitted by the court, the jury found, in substance, that about June 21, 1929, the appellant represented to appellee that the pipe shipped was new and unused pipe and the same grade as the sample exhibited at the time of the sale, and

that the deposit in the pipe was dirt that had blown into the pipe while stored on appellant's yards in Chicago; that said representations were not true; that they were made for the purpose of inducing appellee to accept the 4-inch pipe and agree to pay 17 cents per foot therefor; that the appellee relied on said representations in agreeing to pay 17 cents per foot for the 4-inch pipe; that appellee was induced to execute notes Nos. 2 and 3 upon the representation of appellant that the pipe was new and unused pipe; that appellee did not know at the time of executing notes Nos. 2 and 3 that the pipe was not new and unused; that appellee did not agree to accept all the pipe on the condition that a reduction of 2½ cents per foot be made on the 4-inch pipe; that the reasonable cash value of the three cars of pipe shipped by appellant to appellee was the sum of $2,798. On these findings judgment was rendered for the appellant against appellee in the sum of $139.50, with interest thereon at the rate of 6 per cent. per annum from January 1, 1930, and costs, and that the notes sued on be canceled and delivered by appellant to appellee, from which judgment appellant prosecutes this appeal.

The appellant presents no proposition sufficiently definite and certain by which it challenges the insufficiency of the testimony to warrant the findings of the jury on the issues submitted. 3 Tex. Jur. 880 § 614.

The appellant presents as error the action of the court in refusing its requested peremptory instruction and rendering a judgment against it, because the uncontroverted evidence discloses that appellee received, kept, and used the pipe and thereby waived his right to and estopped himself from defeating the payment of the notes by urging a rescission of the contract.

The appellant did not plead either waiver or estoppel against the defenses urged by appellee, and, in the absence of such pleading, neither can be urged. Shelton et al. v. Lemmon et al. (Tex. Civ. App.) 268 S. W. 177, and authorities cited.

The appellee did not seek a rescission of the contract, but sought to recover damages for the breach of warranty and the alleged fraud and to have such damages set off pro tanto against the balance of the price of the pipe evidenced by the notes. It is not controverted that appellee purchased "5 miles of 4″ O. D. unused tubing, sample inspected and left" with appellee, and one mile of 3¼ inch tubing No. 1 grade. The appellant does not contend that the pipe delivered was in compliance with the contract. In our opinion the record discloses that the written contract and the oral contract, under the findings of the jury, constituted a warranty. Roberts v. Roberts et al. (Tex. Civ. App.) 27 S.W.(2d) 880.

"If the article is not worthless for the purpose for which it was purchased, but is simply of less value or quality than that warranted, retaining possession and using the article by the purchaser would not estop him from urging the partial failure of consideration, or partial breach of the warranty, in defense pro tanto, when sued for the price." Hayden et al. v. Houghton et al. (Tex. Civ. App.) 24 S. W. 803, 804.

"A party defrauded in a contract has his choice of remedies. He may stand to the bargain, and recover damages for the fraud, or he may rescind the contract, and return the thing bought, and receive back what he paid." Mills v. Johnson, 3 Tex. Civ. App. 359, 22 S. W. 530, 531, and authorities cited.

Appellee, having been sued for the balance of the purchase money, had the right to set up the defective quality of the pipe warranted in diminution of the price contracted to be paid. Aultman & Taylor Co. v. Hefner, 67 Tex. 54, 2 S. W. 861.

The appellant urges as error the action of the trial court in rendering judgment against it canceling the notes sued on, because under the testimony, after appellee had an opportunity to inspect the pipe, he and appellant agreed on a settlement, adjusting their differences relative to the kind and quality of the pipe, and appellee promised to pay the notes.

Under the findings of the jury, which in our opinion find sufficient support in the testimony, and under this record, the appellee failed to make a complete inspection of the pipe because he was assured by appellant's agent that the pipe shipped was of the kind and character called for in the contract, and on this assurance appellee made no further investigation, but paid the drafts and executed the notes.

In the case of Al Parker Securities Co. et al. v. Owen, 1 S.W.(2d) 271, 272, the Commission of Appeals says: "A number of assignments of error are presented, but they are all embraced within the contentions: First, that defendant in error was bound by his compromise and settlement of June 12, 1924, the contention being that defendant in error made such compromise and settlement after a full knowledge of all the facts, or at least of such facts as would, as matter of law, put a man of ordinary prudence upon inquiry, and that proper diligence would have resulted in a discovery of all the facts at the time of such compromise and settlement. * * *

"The contentions of plaintiffs in error as embodied in the two propositions above stated cannot be sustained. They are contrary to principles of law abundantly supported by numerous decisions of our courts to the effect that, where one falsely represents to

another a state of facts to exist, and that other relies upon such representations, the former will not in a subsequent suit, based upon such false representations, be allowed to plead that the person to whom they were made should not have relied upon them, but should have exercised diligence according to the knowledge possessed by him to ascertain their falsity."

Finding no reversible error in the record, the judgment is affirmed.