Texas & New Orleans Railroad Company v. Leon McCoy.

Decided March 3, 1909.

1.—Evidence—Expert Opinion—Expert.

Where a witness testified that he had been a locomotive engineer for seventeen years and that he was familiar with the construction of engines and tenders and their coupling apparatus, and with the coupling apparatus of three-

bar engines, and then explained that the bars were rounded at the ends so that they would enter the sockets; that when they so entered that they would move toward each other with great force; that no inexperienced man should undertake to couple the tender to such an engine and that it would take three men to safely perform such a coupling; but on cross-examination it was elicited that his testimony was based on a coupling he saw made with such an engine after the institution of the suit, there was no error in refusing to strike out his expert opinion. He was an expert, and the matter pertained to his trade or calling, and the fact that he had seen the coupling made only once might go to the weight, but not the competency of his testimony.

### 2.—Same—Objection to Evidence—Waiver.

When a party after objecting to the testimony of a witness, brings out on cross-examination all the evidence objected to, he is not in a position to complain.

### 3.—Same.

A party has no right to object to evidence brought out in response to his questions on cross-examination.

### 4.—Same—Personal Injuries—Impairment of Mind—Pleading.

A general allegation that the plaintiff was permanently incapacitated to perform any mental or physical labor, was sufficient, in the absence of a special exception, to authorize the admission of evidence that his mental condition was impaired in every way.

### 5.—Negligence—Coupling—Dangerous Service—Contributory Negligence.

Where the servant, in obedience to an order from the foreman to assist in making a coupling of the tender and engine, placed his back toward the tender with his head between the bars and guided them to the socket, and when they slipped in they were suddenly brought against his head inflicting injury; and it appeared that he was young and inexperienced; that it was the first time he had ever performed such a service which was outside of his regular duties and that these facts were known to the foreman, it was the latter's duty to have warned him of the danger incident to the service, and, failing this, it could not be held as a matter of law that he was guilty of contributory negligence in attempting to perform the service in the manner he did.

### 6.—Assumed Risk—Inexperienced Servant.

A servant cannot be held to have assumed risks which his ignorance and inexperience prevented him from knowing.

### 7.—Same—Coupling—Charge.

An instruction that if the jury believe from the evidence that the danger of making the coupling in the position as attempted by plaintiff was a risk that was known to him, or that it was one so open or obvious that persons of ordinary intelligence, with such knowledge and experience as plaintiff had, if any, would have learned of and avoided by the use of ordinary care in the performance of his duties, then plaintiff is deemed in law to have assumed the risk, and if you so find, let the verdict be for defendant, was correct and sufficient on the issue of assumed risk, and a requested charge thereon which ignored the facts that plaintiff was ignorant, had never before undertaken such a task, and could have known nothing of the dangers attending the service, was properly refused.

### 8.—Charge—Special Charges—Withdrawal of Issue.

A special charge is properly refused when its effect will be to inject an issue not made by the evidence and which has been withdrawn from the jury in the charge of the court.

### 9.—Argument—Appeal to Race Prejudice—Harmless Error.

A statement by counsel for the plaintiff in the closing argument before a white jury in a suit for personal injuries, that his client was a negro and

that he felt sure they would not permit racial prejudice to influence their verdict, and that the client was entitled to the same rights in court as the white man and stood on the same plane and was the equal of the white man before the law, was not an appeal to race prejudice but to justice, and does not seem improper. If it was not a legitimate appeal, it was rendered harmless by an instruction that the race of plaintiff had nothing to do with the case.

**10.—Damages—Verdict.**

Verdict awarding damages for personal injuries in the sum of nine thousand dollars held not excessive.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Kelly & Wolters,* for appellant.—The court erred in permitting the witness, Dr. J. Allen Kyle, to testify, over the objection of the defendant, that the mind of plaintiff was impaired and affected by reason of the injuries sustained, and in refusing to strike out such testimony, because there was no pleading to authorize the admission of such evidence. Southern Pacific Co. v. Martin, 98 Texas, 322; Galveston, H. & S. A. Ry. Co. v. Scott, 18 Texas Civ. App., 322; Campbell, Receiver, v. Cook, 86 Texas, 630; International & G. N. Ry. Co. v. Beasley, 9 Texas Civ. App., 569; Railway Co. v. Rogers, 21 Texas Civ. App., 605; Railway v. Thompson, 37 S. W., 25; Railway v. Measles, 81 Texas, 474.

The court erred in the sixth paragraph of his general charge to the jury, which is as follows:

"If an inexperienced employe is ignorant of perils of his employment or the means of avoiding them, and they would not be obvious to a person of ordinary intelligence, if so inexperienced, without instruction or information; and if the employer knows or ought by ordinary care to have known of such perils, and that the employe is without capacity on account of inexperience to comprehend them, then the law requires that the employer, or he who stands in the employer's place, shall use ordinary care to give to the inexperienced employe such instruction or information of the perils of his service and the means of avoiding the same as is reasonably necessary to enable him to understand and appreciate them."

The court erred in the eighth paragraph of its general charge to the jury, which reads as follows:

"Guided by these instructions if, from the evidence, you believe that plaintiff, while in the employment of defendant, was injured substantially in the manner alleged, and that at the time Woodard was in the service of defendant and had authority from it to direct plaintiff in his work, and that, in the exercise of such authority, he directed plaintiff to help make the coupling in question, and that plaintiff, in obedience to such direction, undertook to do so, and that in so undertaking his head was caught between the drawbars; and if you further believe that plaintiff was inexperienced in that particular work, and that on account of such inexperience he did not know, and was ignorant of the risk or danger of making the coupling in the position as attempted by him, and that the peril of so doing

would not be obvious to a person of ordinary intelligence, if of such inexperience, without instruction or information; and that said Woodard, while acting as vice-principal for defendant in that behalf, as above submitted, if so acting, knew or would in the exercise of ordinary care have known that such risk or peril was attendant upon the coupling, if it was, and also that plaintiff was inexperienced in the work of making the coupling, and without knowledge and ignorant of the danger of making it in the manner as attempted by him, if he was; and if you further believe that Woodard failed to give plaintiff such instruction or information concerning the perils, if any, of making such coupling as was reasonably necessary to enable him to understand and appreciate the particular peril of making the coupling in the position as attempted by him, and that such failure, if shown, was a want of ordinary care on the part of Woodward, and that such want of ordinary care, if shown, was a proximate cause, as before defined, of plaintiff's alleged injuries, if sustained, then let the verdict be for the plaintiff, unless you find for defendant on other issue, or issues, submitted by the court." Railway v. Smith, 37 Texas Civ. App., 189; Railway v. Hester, 64 Texas, 401; Railway v. Garrett, 73 Texas, 262; Railway v. Conroy, 83 Texas, 214; Klatt v. Foster Lumber Co., 66 N. W., 791; Rooney v. Sewall & Day Cordage Co., 36 N. E., 789; Luebke v. Berlin Machine Co., 60 N. W., 713; Craven v. Smith, 61 N. W., 317; Thompson on Neg., sec. 4647; Bailey on Personal Injuries, secs. 2700 and 2701.

The undisputed evidence in this case shows that appellee was a man of ordinary intelligence, and that in the position he occupied while attempting to make the coupling, the danger of holding his head up between the two bars while he was guiding them into the sockets, was one which was open and obvious to any person of ordinary intelligence, and in thus holding his head between said bars he was guilty of negligence which was the proximate cause of his injuries, and therefore the charge requested by appellant to find for it should have been given. Railway v. Williams, 72 Texas, 159; Railway v. French, 86 Texas, 99; Jones v. Railway, 11 Texas Civ. App., 41; Ely v. Railway, 15 Texas Civ. App., 513; Railway v. Smith, 37 Texas Civ. App., 189.

*Ewing & Ring,* for appellee.

FLY, ASSOCIATE JUSTICE.—This suit is based on a claim for damages arising from personal injuries sustained by appellee, an employe of appellant, while engaged in coupling a tender to a locomotive. It was alleged that appellee was employed as an engine wiper in the roundhouse of appellant, in the city of Houston, but that on April 22, 1907, he was directed by his foreman to assist in coupling a tender to a new engine which had a coupling apparatus consisting of three separate bars which had to be manipulated at the same time in making a coupling, and which could not be accomplished with reasonable safety to the employes without three men being engaged in the coupling, one for each bar. That in endeavoring to hold up the middle and one of the side bars appellee got underneath them

and sought to guide them into the sockets of the engine, and his head was caught between the bars and crushed as they came together. He pleaded his youth and inexperience and ignorance of the danger. Appellant filed a general demurrer and general denial, and pleaded contributory negligence and assumed risk. A trial by jury resulted in a verdict and judgment for appellee in the sum of $9,000.

The evidence shows that appellee, a negro about twenty-one years of age, was in the employ of appellant as an engine wiper, and was ordered by his foreman to assist in coupling a tender which had three bars, the largest in the middle, to a locomotive. To do this the three bars had to be raised and held so that each would enter a socket in the engine. The bars were rounded at the ends, so that they were smaller there than at other points, and would the more readily enter the sockets. Upon the rounded corners of the ends of the bars striking the sockets they would glide into them and this would suddenly bring the bars closer together. Appellee being ignorant and inexperienced in the work of coupling such a tender and locomotive, placed his back towards the tender with his arms under one of the side bars and the middle bar, which were very heavy, and with his head between the bars guided them to the sockets, and when they slipped in they were suddenly brought against appellee's head, inflicting serious and permanent injury on him. He was not warned by the foreman of the dangers incident to the work, although he knew of the inexperience of appellee and knew of the dangers of the service.

The first and third assignments of error assail the action of the court in refusing to strike out the testimony of J. B. Hanks, who testified that he had been in the railroad business twenty-three years, during seventeen years of which he was a locomotive engineer, and that he was familiar with the construction of engines, locomotive engines and tenders and their coupling appurtenances. He also testified: "I am familiar with the coupling apparatus of these three-bar engines." He then explained that the bars were rounded at the ends so that they would enter the sockets, and that when so entered they would move towards each other with great force, and that no inexperienced man should undertake the task of coupling the tender to such an engine, and that it would take three men to safely perform such a coupling. All of this was testified to without objection, but on the cross-examination it was elicited that the testimony of the witness as to the coupling of three-bar engines was based on a coupling he saw made with such an engine after the institution of this suit. Appellant then moved the court to exclude all the testimony of the witness as an expert with reference to the proper method of coupling the three-bar engines, on the ground that he was not an expert. The witness on further examination stated that he had seen engines coupled thousands of times, but had only once seen a three-bar engine coupled. He further stated: "I would know just as well how to properly make a coupling on this kind of an engine as if I had done it a thousand times. . . . From my experience as an engineer I am able to tell of the dangers and methods of mak-

ing a coupling on this particular engine; without my experience as an engineer I could not tell of them; I would not know of them."

The witness fully qualified himself as an expert in the coupling of trains. He was skilled in that particular trade and he could have testified as to the dangers of the peculiar coupling of the engine in question upon a full description of it without ever having seen it, and if it appeared that he was fully acquainted with the mechanism and operation of the peculiar coupling it would not matter whether he gained his knowledge by having examined it and having seen it in operation one time or a thousand times. It was a matter pertaining to his trade or calling. The fact that the witness had seen the coupling in operation only once might go to the weight of his testimony, but not to the competency of it. The court did not err in refusing to strike out the evidence. In this connection it may be noted that after appellant had objected to all the testimony of the witness Hanks, he was again cross-examined by appellant and all of the evidence objected to again brought out, and it is in no position to object to the evidence.

Appellant objected to the statement of the witness, Dr. Kyle, in connection with the condition of appellee, that "his mental condition is impaired in every way," the ground of objection being that there was no pleading to sustain it. It was alleged in the petition that appellee was "permanently incapacitated to perform any mental or physical labor." That is a general allegation, but sufficient in the absence of a special exception to it to authorize the admission of the evidence. Further, the evidence objected to was brought out on the cross-examination, and practically the same evidence had passed unchallenged in another part of the cross-examination. Appellant objected to the one statement alone, and before in the cross-examination the witness stated, "Can not coordinate his movements; he has the power but he hasn't the ability to direct the movements with that hand that he can with the right, nor has he the mental condition to do so, his mental condition is also impaired." That went in without objection. Appellant is in no position to complain. A party has no right to object to evidence brought out in response to his questions on cross-examination.

The charges complained of in the fourth and fifth assignments are not open to the criticisms directed against them. The charge, considered as a whole, presents the law of the case in a clear manner. The jury was instructed that appellee could not recover unless he had exercised ordinary care in his endeavor to couple the tender and locomotive. The charge presented every issue raised by the facts.

The sixth assignment of error is disposed of by our conclusions of fact. It can not be said as a matter of law that appellee was guilty of contributory negligence in placing his head between the bars. The question was one for the jury. He was young and inexperienced and appellant knew it and should have warned him of the dangers incident to the service required of him. Appellee was ordered to perform a service outside of the regular line of his employment, and it was the first time that he had ever performed such service, and being ignorant and inexperienced, and these facts being known to appellant's

foreman, appellee should have been informed of the peculiar dangers that attended the service. (Galveston, H. & S. A. Ry. v. Hughes, 22 Texas Civ. App., 134.)

So far as the special charge on assumed risk was correct and applicable to the facts, it was given in the charge of the court and the court properly refused to give the charge requested by appellant. The charge ignores the facts that appellee was ignorant and had never before undertaken to couple an engine with three bars, and could have known nothing of the dangers attending such service. The court instructed the jury: "If you believe from the evidence that the danger of making the coupling in the position as attempted by plaintiff was a risk that was known to him, or that it was one that was so open or obvious that a person of ordinary intelligence with such knowledge and experience as plaintiff had, if any, would have learned of and avoided by the use of ordinary care in the performance of his duties, then plaintiff is deemed in law to have assumed the risk, and if you so find, let the verdict be for the defendant." That charge was amply sufficient, and the requested charge was not the law of the case. Appellee could not have assumed risks which his ignorance and inexperience prevented him from knowing. (Galveston, H. & S. A. Ry. v. Renz, 24 Texas Civ. App., 335; Rice v. Dewberry (Texas Civ. App.), 93 S. W., 715.)

The charge, the rejection of which is complained of in the eighth assignment of error, was properly refused because it sought to inject an issue not made by the evidence, and which had been withdrawn in the charge of the court, from the jury. The court instructed the jury that the only ground of negligence relied on by appellee was the failure to instruct him as to the dangers of the service, and the court very properly would not permit appellant to drag in something that could only tend to confuse the minds of the jury.

Counsel for appellee in his closing address to the jury reminded the jury, composed of white men, that his client was a negro and that he felt sure that they would not permit racial prejudice to influence their verdict, and that he was entitled to the same rights in court as the white man was, and stood on the same plane and was the equal of the white man before the law. The appeal was not to any race prejudice, but, on the other hand, was an appeal for justice and a reminder that the laws of Texas know no color, and we do not feel inclined to hold that it was improper. But, if it was not, a legitimate appeal, it was rendered harmless by an instruction to the jury by the court that the race of appellant had nothing to do with the case. How prejudice and passion could be aroused in the minds of a Texas jury of white men in favor of a negro, by the information that the latter had the same rights before the law as a white man, is inconceivable to us and no attempt is made to show how they could have been engendered, and yet it is urged that the speech caused the jury to render an excessive verdict. Appellee was, when hurt, a strong, vigorous negro, about twenty-one years of age, and earning $1.50 a day. His head was crushed in such a manner that the blood ran out of one of his ears for eleven days. His skull was fractured at the base, and an operation became necessary to take

out the clotted blood.  One side is partially paralyzed.  A piece of the skull was removed, and appellee has not a free use of his hands, and his mind was impaired.  It was in evidence that he will never be able to perform any work.  His injuries are permanent.  His eyesight is affected so that he has double vision and that condition of the eyes is permanent.  These injuries considered with the suffering endured by appellee completely answer the complaint as to excess in the verdict.  The judgment is affirmed.

*Affirmed.*

Writ of error refused.