**SWIFT et al. v. ROACH. (No. 96.)**

(Court of Civil Appeals of Texas. Waco. Dec. 4, 1924.)

**1. Sales ⚖︎53(3)—Evidence held not to raise issue of fraud by seller inducing buyers to sign contract.**

Evidence *held* not to raise issue of seller's fraud in inducing buyers to sign contract for threshing machine and engine, but to show they relied on verbal statements as promises to be performed in future.

**2. Evidence ⚖︎444(4)—Contractual statement not included in written sale contract held inadmissible.**

If statement by seller that threshing machine and engine were not buyers' until they were set up and worked could be construed as promise to permit buyers to return them if unsatisfactory, it was contractual and inadmissible to vary terms of written sales contract.

**3. Sales ⚖︎425—Buyers limited to relief for breach of warranty.**

Where written contract for sale of threshing machine and engine, which proved unsatisfactory, did not provide for rescission, buyers' remedy thereunder was limited to remedy for breach of warranty.

**4. Sales ⚖︎428—Damages for breach of warranty held applicable to defeat recovery on purchase price notes.**

Damages for breach of warranty of goods purchased are applicable to abate or defeat recovery on notes given as part of purchase price.

**5. Sales ⚖︎445(4)—Evidence held not to raise issue of total unfitness of machinery.**

Where purchase of engine and separator was entire, and there was no complaint of manner in which engine performed functions as tractor, evidence that separator did not perform its functions effectively or in reasonably satisfactory manner, and complaint about size and location of pulley on engine when operating separator, did not raise issue of total unfitness for intended uses or worthlessness.

**6. Sales ⚖︎439, 445(4)—Buyers had burden of proving damages; directed verdict for recovery on purchase-money notes held proper.**

Where evidence did not raise issue that threshing machine and engine were totally unfit for use intended, and were worthless, the burden was on buyers to prove their damages from breach of warranty, and in absence of such proof there was no basis for submission of issue as to amount of damages to be applied in abatement of recovery on purchase-money notes, and directed verdict for plaintiff was proper.

**7. Sales ⚖︎442(3)—Measure of damages for breach of warranty stated.**

The measure of damages for breach of warranty of machinery, not totally worthless, was difference between contract price and market value of machinery actually delivered.

**8. Sales ⚖︎288(4)—Buyers' failure to comply with terms of warranty held waiver of damages for breach thereof.**

Where contract for purchase of thresher and engine provided that buyers should, within six days of receipt, give seller notice in writing of what parts thereof did not function properly, failure by buyers so to notify seller was waiver of damages from breach of warranty.

Appeal from District Court, McLennan County; James P. Alexander, Judge.

Action by L. R. Roach against J. B. Swift and another. Judgment for plaintiff, and defendants appeal. Affirmed.

T. R. Mears, of Gatesville, for appellants. Kyle Vick, of Waco, for appellee.

GALLAGHER, C. J. L. R. Roach, appellee herein, sued J. B. Swift and A. J. Clearman, appellants herein, to recover on three promissory notes, aggregating $2,000, executed by appellants to C. P. Shaffer and by him assigned to appellee, and to foreclose a mortgage lien on one Avery threshing machine, separator, complete, and one Avery motor cultivator. Appellants pleaded a total failure of consideration for the notes sued on and an offer to return the property, and also that said engine (called motor cultivator in the contract) and said separator would not operate, and could not be made to operate efficiently, and were worthless. The offer to return was based upon an allegation that the said machinery was purchased under a verbal contract, in which contract said Shaffer agreed that said order for said machinery was not to become final or binding on appellants until it proved capable of doing all the same was represented and warranted to do by said Shaffer, and that all said machinery was to be and remain the property of Shaffer, and that the obligation on the part of appellants to pay for the same was not to become binding or effective until said machinery proved satisfactory to them, and if same did not prove satisfactory to them then said notes and contract should remain their property and should be delivered to them. Appellee in reply specially pleaded the provision of the written order relied on by him, as hereinafter shown in reciting in part the contents of the same as introduced in evidence. There was a trial before a jury, an instructed verdict for appellee, and judgment in accordance therewith.

[1] The case is submitted in appellants' brief on a single assignment of error, which is as follows:

"The court erred in peremptorily instructing the jury to return a verdict in favor of the plaintiff, in that it is shown by the uncontroverted evidence of the witnesses, to wit, J. S. Kerby, Peck Kerby, W. W. Pollard, J. B. Swift, A. J. Clearman, and others, that threshing ma-

⚖︎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

chine was in such condition at the time of delivery of same to the defendants that same would not thresh grain properly; that the wind stack would not work; that the machine would not separate the grain from the · chaff, and that the plaintiff, L. R. Roach, purchased said notes from C. P. Shaffer in December, 1920, after maturity of each of said notes, and that said separator and threshing machine was not complete, in that same did not contain and have attached thereto a wind straw stacker that would properly carry that straw from the separator; each of said notes having written in its face the words, 'This note is given for one Avery motor cultivator, one 22x 32 Avery separator complete,' and the evidence shows that same was not complete, in that said separator was not properly equipped in accordance with the terms of said notes, and for the further reason that the plaintiff L. R. Roach failed to prove by any legitimate testimony that said notes had been extended beyond the due dates, as shown by the notes, and for the further reason that the undisputed evidence shows that the plaintiff, L. R. Roach, did not pay anything of a monetary value for said notes, he having testified that he traded a threshing machine for said notes, there being no evidence as to the value or worth of said separator, traded for said notes, and the evidence of defendant J. B. Swift is that the separator is not worth a dime; he said he wouldn't give a dime for same."

Under said assignments appellants submit a single proposition, which is as follows:

"Appellants make the proposition that in the trial of the case before a jury, where the evidence is conflicting as to who should recover, it is the duty of the court to submit the issues to the jury in an appropriate charge." ·

The undisputed testimony showed that appellee acquired the notes sued on in trade under a written indorsement, without recourse from C. P. Shaffer, the payee therein, after their maturity. There was no proof of any valid extension of the maturity dates of said notes. Appellee introduced in evidence the notes sued on. Each of the same was dated July 8, 1920, and contained the following recital:

"This note is given for one Avery motor cultivator, one 22x32 separator complete, and a lien is hereby given on the same to secure the payment hereon."

Appellee also introduced in evidence an order contract, dated June 14, 1920, signed by appellants. This order stated that the signers thereby ordered from C. P. Shaffer, of McGregor, to be shipped at once, one Avery motor cultivator traction, H. P. ——— "and the fixtures usually furnished by you"; also Avery 22x32 separator, specifying the fixtures to be furnished therewith. Said order also contained, among other paragraphs, the following:

"In consideration whereof, the undersigned agrees to receive same on its arrival on cars, subject to all conditions of the warranty and pay freight and charges thereon from the factory. And also agrees to pay to your order the sum of $2,260, as follows: $——— payable cash with order; $260, payable cash on delivery; $500 July 20, 1920; $500 August 20, 1920; $1,000 September 20, 1920. * * *

"It is agreed that should I (we) fail to receive and pay for the property herein ordered, in full as above, you may retain all money paid on account of same as liquidated damages for failure to comply with the terms and conditions of this order.

"In case said property should come into my possession before payment in full, it is understood that title thereto shall remain in you until the entire purchase price has been paid in cash, but said property shall be held at our risk and expense in respect to loss or damages from any cause and taxes and charges of every kind. * * *

"I [we] agree that this order shall not be countermanded and hereby acknowledge receipt of a correct copy of this order.

"Notice.—The seller will in no case be bound by verbal agreements of any kind. This order must comprise all the agreements in writing and no agreement in writing will be binding upon the seller unless it is duly submitted to it for approval and acceptance."

The warranty was printed on the back of the order and covered defects in material, and workmanship, and agreed to replace at the factory in Peoria, Ill., any such defective parts. It also represented that the seller's service man could make said separator operate successfully, stating the manner of operation in detail. The stipulations concerning notice of defects, effect of failing to give such notice, etc., so far as deemed necessary to be set forth herein, are as follows: ·

"If within six (6) days from the first starting of said machinery, the purchaser is not satisfied that said machinery can be made to operate and do the work as above, he hereby agrees to notify the seller in writing, stating clearly which part of the machinery as above indicated in his opinion is not performing as herein represented, and on receipt of such written, notice setting forth specifically the difficulty and asking for a service man to make the machinery perform as above, the seller will send a service man as soon as possible after such notice is received, and a reasonable time shall be allowed for such service man to reach the machine. And the purchaser hereby agrees to render necessary and friendly assistance to such service man in order that he may make tests of any or all parts that are claimed to be deficient in such written notice, and if such tests prove that said machinery does the work as above stated, the purchaser agrees to pay the traveling expenses of such service man, and to make no further demand on the seller.

"Failure to give such notice in any respect * * * or to pay above-described notes when due, shall be a waiver by the purchaser of all rights under these representations. It is agreed that the use of said machinery after the expiration of the period of six (6) days subsequent to the first use of the machine shall be deemed and considered conclusive proof that

the same is in all respects as herein represented.

"The seller employs men who are more or less familiar with operating said machinery, but does not undertake to be bound by the action of such employees, when they are assisting purchasers, and it is not to be understood that such employees are the service men referred to in this order; and it is agreed that the only service men that the seller is bound by are the service men sent in answer to the written notice as above stipulated, and if the said seller shall render assistance of any kind to the purchaser in delivering, starting or operating said machinery or any part thereof, either before or after the six (6) days, such assistance shall in no case be deemed a waiver of or excuse for any failure on the part of the purchaser to fully keep and perform any of the conditions herein specified and agreed to by him."

Appellee then rested his case. The testimony of appellants was the only evidence concerning what was said and done at the time of the purchase of said machinery. The substance of the testimony of appellant Clearman on this issue, omitting repetitions, is as follows:

"That conversation when we first entered negotiations for the purchase of this machine took place out on the farm of Mr. Sheffield. Mr. Swift, Mr. Sheffield, Mr. Shaffer, and me were all present at that conversation, and at that time we reached an agreement relative to the purchase of a threshing machine with Mr. Shaffer. The contract under which we purchased this threshing machine from C. P. Shaffer was not reduced to writing; that is, the terms of it. We never had no contract at all. This instrument they have here wasn't nothing but an order for the machine that Mr. Shaffer wanted. We just wanted that size machine, it was a 22x32 separator, and he said that he thought it would do the work, and said it would do it, and if it didn't do it he would make it. He said, 'Boys, this here ain't your threshing machine until it's put out there and does the work.' The reason we signed that contract was because Mr. Shaffer agreed to make this threshing machine do the work. He said he wanted that contract, or whatever it is, so he could show the 'company, and that he had to have something to show the company he had sold the machine. At that time the contract was being prepared, and at the time I signed it I thought I understood what was in the contract. Mr. Shaffer told me what he was placing in the contract. He said; 'One Avery separator 22x32 and one motor cultivator.' I don't believe it says what power it has got, and then this thresher was to be equipped with all equipment, just like any other thresher. That was about all in the contract, I reckon. All the parties before named were present."

On cross-examination said witness testified substantially as follows:

"'I don't remember that after we agreed upon the machinery and the price that Mr. Shaffer said, 'I will just take your order for this machine,' and then wrote out his order and handed it to Mr. Swift to read, and that Mr. Swift says, 'I haven't got my glasses,' so Mr. Shaffer read it over, and we signed it. I don't remember whether I testified to those facts previously or not. I might have testified to that at Gatesville. I won't say that I did, because I don't remember. My recollection at that time was better than it is now. At any rate, it was just as good then as it is now, so if I did testify to that state of facts on the Gatesville trial it was true."

Appellant Swift testified, omitting repetitions and immaterial statements, substantially as follows:

"I said, 'Now, Charlie, I don't know a frazzling thing about a thresher, and I want you to understand that I don't know a thing about them, and I am just going to leave it up to you to say whether we get a good one or not. I don't want a separator without an engine, and I don't want an engine without a separator.' He says, 'That is all right. I will guarantee this here thresher to be just what I say it is, and that it will do just what I say it will do.' So I said, 'Now, Charlie, is it equipped with everything—scales, weigher, and everything, like a big machine has got on it?' and he says, 'It has got everything.' Well, we gave an order for the machine, but he didn't call it no order; well, he did call it an order, too, but he never called it no contract. He ordered the machine shipped to McGregor, and we signed the notes the day we got the machine."

Neither Shaffer nor Sheffield were called as witnesses. All this testimony was admitted, apparently without objection. There was no testimony that Shaffer made any representations as to what was or was not contained in the written order. There was no contention that appellants did not have full opportunity to acquaint themselves with all its terms and provisions at the time they signed the same. They did not claim that it was not read over to them. Appellant Clearman said that, if he did state on a prior trial that it was read over to them, it was true, that he did not remember then. The order as a whole appears to be a rather full and elaborate contract of purchase. It was signed by appellants and delivered to Shaffer. Upon the arrival of the machinery about three weeks later they received the same, executed and delivered the notes sued on, and otherwise complied with the terms of the purchase as stated therein.

[2] We do not think the evidence raises an issue of any fraud on the part of Shaffer, inducing appellants to sign said contract under the belief that its contents were other or different from what they really were. Indeed, appellants testified that Shaffer said the machinery would do the work, and if it didn't do it he would make it, and that they signed the order because he agreed to make such machinery do the work. This was a shorthand rendering of what the order in elaborate detail guaranteed. Appellants did not testify that Shaffer agreed to take the machinery back and return the consideration

if he didn't make it work. Such agreement must be deduced from the expression, "Boys, 'this here ain't your threshing machine until it is put out here and does the work," attributed to Shaffer by appellant Clearman. If such statement so made by Shaffer is to be construed as a promise to permit appellants to return the machinery and receive back the consideration if such machinery proved unsatisfactory, it was plainly contractual, and its effect as such is clearly excluded because not contained in the written order or contract. We quote from Bigham v. Bigham, 57 Tex. 238, 240, the rule announced by our Supreme Court as applicable in such cases, as follows:

"The general rule is nowhere more clearly stated than by Mr. Greenleaf in his work upon Evidence: 'Where parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking, was reduced to writing, and all oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time when it was completed, or afterwards, as it would tend, in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected.' 1 Greenl. 275."

Application of such rule, excluding prior or contemporaneous parol agreements which would add to, subtract from, or vary the terms of a written contract between the parties thereto, is elaborately discussed and illustrated in the cases of White, Ward & Erwin v. Hager, 112 Tex. 516, 248 S. W. 319; Eldora Oil Co. v. Thompson (Tex. Com. App.) 244 S. W. 505; Harper v. Lott Town & Improvement Co. (Tex. Com. App.) 228 S. W. 188.

[3] Appellants understood at the time they signed the order for said machinery that the same was to be shipped from the factory where it was made. They necessarily knew that the seller did not know whether the particular machinery shipped in response to his order would operate satisfactorily or not. Appellant Swift testified specifically that the reason they signed the contract was: "Mr. Shaffer agreed to make this threshing machine do the work." We think this evidence shows conclusively that appellants relied on the seller's verbal statements as promises to be performed in the future, and not as statements of fact within his knowledge at the time. Such being the case, there was no proof that Mr. Shaffer practiced any fraud upon appellants in inducing them to enter into the contract for the purchase of said machinery, and they are bound by the terms thereof. W. D. Sessums Motor Co. v. White (Tex. Civ. App.) 239 S. W. 329, 330. There being no provision therein for rescission,

266 S.W.—54

they were limited to the relief afforded by the rules of law applicable in cases of breach of warranty. These rules are stated by our Supreme Court in the case of Wright v. Davenport, 44 Tex. 164, 167, as follows:

"When there is no fraud, and the warranty goes to the fitness of the article, and it proves wholly unsuitable, or to the identity of the article, and it proves another thing from that for which it was sold, it may be returned upon breach of the agreement or warranty. But if the warranty goes to the degree of fitness or to quality, and it proves to be of an inferior quality or fitness, the goods cannot be returned, and the remedy is by action for damages. * * * Thus, if a machine is sold for a particular purpose, and it will perform none of the functions, it may be returned; but, if it only perform them badly, the remedy is by action for damages."

[4] Damages for breach of warranty may in such cases be applied to abate or defeat a recovery on notes given as a part of the purchase price. Wright v. Davenport, supra.

[5-7] Appellants ordered an Avery separator and engine. There is no contention that the separator and engine delivered were not the very kind ordered. The evidence showed, however, that the separator would not perform its functions in an effective or reasonably satisfactory manner. There was some complaint about the size of a pulley and its location on the engine when such engine was used in operating the separator. The engine, however, was suitable for use, and intended for use, in pulling plows in breaking land or cultivating crops, and there was testimony that the same was so used by appellants. There was no complaint of the manner in which it performed its functions as a tractor. The purchase was entire. The separator was used to thresh some six crops of grain during the year it was purchased. Appellant Swift testified concerning the thresher:

"I considered it utterly worthless *unless it was fixed. I would not give a dime for it the way it was.*"

There was no other evidence concerning the value of the separator so received and used by appellants, and no evidence whatever of the value of the engine. Such evidence therefore failed to raise an issue that the machinery delivered was as a whole totally unfit for the uses intended, or that the same was worthless. If appellants were entitled to abate the purchase price of said machinery by reason of its failure to function according to the warranties, it devolved upon them to prove the measure of their damage, which, according to the rule announced by the Supreme Court, in the case of Gutta Percha & Rubber Mfg. Co. v. City of Cleburne, 102 Tex. 36, 38, 112 S. W. 1047, was the difference between the contract price of such machinery and the market value of the machinery actually delivered. See, also,

Alba-Malakoff Lignite Co. v. Hercules Powder Sales Co. (Tex. Com. App.) 235 S. W. 547, 548. There being no such proof, there was no basis for the submission of an issue concerning the amount of their damage to be applied in abatement of a recovery by plaintiff on the notes sued on. Wright v. Davenport, supra; W. D. Sessums Motor Co. v. White (Tex. Civ. App.) 239 S. W. 329, 330, 331; Exchange Bank of Fort Worth v. Hensley & Roland (Tex. Civ. App.) 240 S. W. 679, 682; Ulrich v. Galveston-Seeburg Electric Piano Co. (Tex. Civ. App.) 199 S. W. 310, 311; E. F. Elmberg Co. v. Dunlap Hardware Co. (Tex. Civ. App.) 234 S. W. 700, 704.

[8] The operation of the separator was not, according to the undisputed evidence, reasonably efficient or satisfactory. While it was operated from the time of its delivery to appellants to the end of the season, it gave more or less trouble from time to time. Mr. Shaffer in person, or by his employees, attempted from time to time to remedy the trouble and to make it operate efficiently, but failed to do so. Appellants did not within six days, or at any other time after the starting of said machinery, give the seller any notice in writing that it was not functioning properly. It was specifically provided by the terms of the warranty in this case that such notice should be given, and that the same should state which part of the machinery, in the opinion of the purchaser, was not performing its functions as warranted. It was further specifically provided that a failure to give such notice should be a waiver by the purchaser of all rights under such warranty, and that the same should be deemed conclusive proof that the machinery was in all respects as represented or warranted. According to the authorities, the six days within which such written notice might have been given began with the first day of use by appellants after the machinery was set up and put in operation by the seller or his employees, and its further operation turned over exclusively to appellants. Shearer v. Gaar Scott & Co., 41 Tex. Civ. App. 39, 90 S. W. 684 (writ refused). The evidence does not disclose whether the efforts of the seller or his employees to make said separator operate satisfactorily were invoked or begun within six days after the operation of the same was turned over to appellants. It was stipulated, however, that assistance rendered by the seller, in the absence of such written notice either before or after the expiration of said six days, should not be deemed a waiver of any failure on the part of appellants to comply with the conditions specified in such warranty. Appellee pleaded these provisions in full. Appellants failed to plead any waiver thereof by the seller, and it is therefore not necessary to review the evidence for the purpose of determining whether such issue was raised thereby. Fetzer v. Haralson (Tex. Civ. App.) 147 S. W. 292, 295 (writ refused); Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 979, 983. Similar provisions with reference to giving written notice of the failure of machinery purchased to operate efficiently and satisfactorily as warranted, and with reference to the effect of continued use thereof for the stipulated time, without giving such notice, have been frequently passed upon by our courts, and their validity upheld. Under the authorities in this state, the failure of appellant to comply with the terms of the warranty under discussion was a waiver by them of damages for the breach thereof. Stark v. George (Tex. Com. App.) 252 S. W. 1053, and authorities there cited; Shearer v. Gaar Scott & Co., supra; Fetzer v. Haralson, supra, 296; J. I. Case Threshing Machine Co. v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835, 836, 837.

Appellants' said assignment of error is overruled, and the judgment of the trial court affirmed.