## ST. MARY'S OIL ENGINE CO. v. ALLEN-MORROW CO. (No. 810.)

Court of Civil Appeals of Texas. Waco. May 30, 1929.

Rehearing Denied Oct. 3, 1929.

John A. Hughes, of Waco, for appellant.
Weatherby & Rogers and B. A. Garrett, all of Waco, for appellee.

GALLAGHER, C. J. Allen-Morrow Company, a partnership composed of P. C. Allen and C. B. Morrow, Jr., appellees herein, instituted this suit against St. Mary's Oil Engine Company, a corporation, appellant herein, to recover as damages the purchase price or reasonable market value of an engine purchased by them from appellant and which they claimed proved worthless, and certain special or consequential damages incurred in attempting to operate the same.

Appellant, acting by one R. B. Strickland as representative in this state, on February 9, 1926, executed and delivered to appellees a certain contract, in which it agreed to furnish and install "one 30 H. P. special electric St. Mary's Diesel oil engine, complete with all the necessary fittings and accessories, as per catalogue specifications," one General Electric generator, and certain equipment for use in connection therewith, for the gross sum of $3,229.35. A written proposition made by appellant through its said representative to appellees, together with a copy of appellant's catalogue mentioned in said contract, were attached thereto by the parties at the time such contract was signed. Said catalogue contained many statements with reference to the efficiency and superiority of said engine in operation. It also contained a statement that appellant would follow the sale with service and that it maintained branch offices or distributing points which carried a line of repair parts and at which a service man was constantly available. Said contract also contained certain specific warranties, which will be recited in connection with the discussion of the issues relating thereto presented by appellant. All said machinery was duly delivered and installed by appellant. Appellees paid the consideration agreed upon partly in cash and partly by negotiable promissory notes, which were transferred by appellant long before the institution of this suit. Said engine never operated satisfactorily. After several months of inefficient, unsatisfactory, and intermittent operation, the breaking of one of its parts practically wrecked the same. Appellees make no complaint of the electric generator or of the other equipment furnished and installed by appellant under said contract.

Appellees then brought this suit for damages. Their petition covers 27 pages of the transcript. The allegations therein contained are sufficient to support a recovery on the theory that appellant breached its contract by delivering an engine fundamentally different in kind, quality, and efficiency from that specified in such contract, or on the theory that certain warranties contained therein were breached by such delivery. Appellees alleged that the engine furnished was defective, incapable of successful operation, and actually worthless. They further alleged that they had tendered what remained thereof to appellant, and continued such tender in said petition.

The case was submitted to a jury on special issues. The principal recovery awarded

appellees is based on findings of the jury in substance as follows:

(1) Appellant did not deliver to appellee the engine described in the contract of purchase in evidence.

(2) The engine so delivered was so fundamentally defective as to render the same incapable of delivering 30 horse power.

(3) The reasonable market value of the engine specified in the contract at the date of delivery was $2,600.

(4) The engine in fact delivered had at the time of its delivery no reasonable market value and was worth "nothing."

(5) The engine in fact delivered had at the time of its delivery no actual value and was worth "nothing."

The jury returned other findings upon which the court awarded appellees a recovery of special or consequential damages. Judgment was entered in pursuance of the verdict. Appellant presents said judgment and the record upon which it was rendered to this court for review.

### Opinion.

■■ Appellees object to the consideration of the propositions presented by appellant under its seventh assignment of error, on the ground that said assignment is multifarious. Said assignment complains of five separate rulings of the court, and is therefore subject to the criticism urged. However, all said several rulings are complained of in separate designated subdivisions of said assignment. Each of said subdivisions is presented for consideration by a separate and distinct proposition. Said propositions are numbered from 7 to 12, inclusive. They all relate to the admission over appellant's objection of testimony given by appellee Morrow with reference to matters more or less connected. We have therefore decided, in the exercise of our discretion, to consider the same. Carroll v. Jackson (Tex. Civ. App.) 277 S. W. 427, 429, par. 3, and authorities there cited.

■ Said witness stated that he was not an engineer and could not tell in technical terms what he saw; that all he could tell was what he observed from being on the ground every day; that when the engine was first installed it had a knock in it that could be heard all over the building; that it would run at its best several days, and then something would get the matter with it and it would start slowing down; that finally it would not operate over 24 hours before it would start slowing down and picking up; that when it did so the lights would get weak and bright again; and that they had lights to burn out on that account, and motors too. At this point appellant's attorney interrupted the witness and made the following objection: "Your Honor, this witness is giving expert testimony when he admitted himself that he is not an engineer. He is stating here that

the engine slows down, has a knock in it, goes fast or goes slow, burns out light globes and burns out motors." The witness, apparently in reply to said objection, said: "That is just what I observed." The court in response to said objection ruled that the witness could only state the facts, and that what caused the lights to go out was an opinion. Appellant's objection was to all the testimony above recited, and there was no motion to further or more definitely exclude his testimony as to the cause of the burning out of lights and motors. All the other testimony included in appellant's objection was merely the recital of facts observed by the witness and cannot be properly classed as expert or opinion evidence. Appellant's seventh proposition presents nothing justifying a reversal.

■■ Said witness testified that at the time appellees purchased said engine he was not engaged in buying and selling such engines; that he had only bought that one engine and had not sold any; that up until the time appellees began negotiations for the purchase and installation of the power plant, he made no investigation with reference to the market value of such engines; that prior to the purchase he did make such investigation; that his knowledge of market values was based on the prices at which salesmen offered to sell such engines; that he investigated prices asked for said engine by appellant and the prices asked for similar engines by other manufacturers; that appellant's representative priced the engine separate from the generator and other equipment, but that the purchase was in gross for $3,229.35; that appellant's representative stated that with the addition of the 40 horse power cylinder subsequently purchased, such engine was worth $353 more than before, being $300 for said new cylinder and $53 for freight. He further testified: "I ascertained and knew the reasonable market value of an engine and accessories such as the defendants contracted to sell us in this case, because we are in the market for an engine of this class and we investigated different engines, and different engine makers had their representatives call on us, and showed us what they had. In my investigation I found what other engines of a similar nature and type were selling for at Waco." He further testified that he had made an investigation to ascertain whether there was any market value for what remained of said engine, and that he had not been able to find any market therefor; that he had offered the same to appellant, but that it made no offer therefor. With reference to the condition of the remains of said engine he testified: "That stuff we have down there now is a complete wreck and it is not worth anything except as junk. The crank shaft broke while it was running and it is all torn up. When the crank shaft broke it went through the engine and there were two big

water leaks on each side of the cylinder head, and the shaft and two flywheels busted and just doubled over, throwing the two big flywheels, they just doubled over, you know; all you have got to do is to go down there and look at the engine and see that it is a total wreck. * * * That engine had no value whatever after it blew up." Over the objection of appellant that the witness was not qualified, he was permitted to testify that the market value of the engine as originally contracted for, together with the generator and other equipment, was, before the addition of the new cylinder, $3,229.35, and after the addition thereof, $3,582.35, but that the engine actually delivered did not have any value; that it was valueless at the time it was delivered to appellees; and that it had no value whatever after it blew up.

The witness testified that he knew the market value of the entire purchase as represented and contracted for at the time, and further testified to the facts and circumstances upon which his estimate of such value was based. He further testified, in effect, that such estimate of value was in accordance with the declarations or representations of appellant's representatives at the time of purchase. There is no inflexible rule prescribing the exact amount of information concerning sales or offers to sell similar property which must be possessed by a witness before he will be held competent to testify to his opinion or estimate of the market value of an article. The qualification of a witness is primarily a question for the trial court, and his ruling thereon will not be revised unless it appears that such ruling was clearly wrong. Rogers & Adams v. Lancaster (Tex. Com. App.) 248 S. W. 660, 661, 662, and authorities there cited; M. P. R. R. Co. v. Fagan, 72 Tex. 127, 130, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; Davis v. Fain (Tex. Civ. App.) 152 S. W. 218, 219, par. 1; Houston Belt & Terminal R. Co. v. Vogel (Tex. Civ. App.) 179 S. W. 268, 270 (bottom second column); 1 Wigmore on Evidence, p. 1136 et seq., § 719. Apparently there is no contention that the engine after it was wrecked had a market value. The witness was the owner of the wrecked engine. He testified in detail with reference to the condition of the engine after the wreck and with reference to his efforts to get an offer for the remains, and his failure to get any offer at all therefor. His testimony showed sufficient qualification to entitle him to testify to the actual value of the engine. Pecos & N. T. Ry. Co. v. Grundy (Tex. Civ. App.) 171 S. W. 318, 319, pars. 2 and 3; 1 Wigmore on Evidence, p. 1134, § 716. Appellant's twelfth proposition presents nothing justifying a reversal.

We have examined the testimony complained of in appellant's eighth, ninth, and tenth propositions, and have concluded that the same was properly admitted. Appellant's eleventh proposition complains of testimony bearing on the issue of the measure of appellees' damage and will be considered in that connection.

■ Appellant in its seventeenth proposition complains of the admission over its objection of the testimony of appellee Allen that the market value of an engine, generator, and equipment such as was specified in their contract of purchase was $3,229.35. The qualification of the witness to testify on the issue of value was substantially the same as the qualification of the witness Morrow. Appellant, however, on cross-examination of appellee Allen proved by him that the market price of the engine, generator, and equipment as originally contracted for was $3,229.35, and that the market price of the engine contracted for alone was in the neighborhood of $2,600 at that time, and that appellant's representative Strickland so stated. Appellant by such cross-examination waived its objection to the qualification of said witness and to his prior testimony on the issue of value. T. & N. O. R. Co. v. McCoy, 54 Tex. Civ. App. 278, 117 S. W. 446, 448 (writ refused); Campbell v. Campbell (Tex. Civ. App.) 215 S. W. 134, 138, par. 9 (writ refused); Forrest y. Hull (Tex. Civ. App.) 267 S. W. 308, par. 3. Said proposition does not present reversible error.

■ Appellant by numerous propositions contends that neither appellees' pleadings nor the testimony introduced thereunder shows a breach by it of its contract under which said engine, generator, and equipment were purchased by appellees, but that the same shows merely a breach of warranty. Appellant in that connection further contends that its warranty was limited to the replacement of defective and broken parts, and that the measure of damage applied by the court, which was the difference between the value of the engine as it was warranted to be and its value as actually delivered, was erroneous. We have held in general terms in the opening statement in this opinion that appellees' pleadings were sufficient to support a recovery upon either of said theories. We will here recite some of the facts introduced in evidence. The contract under which said engine was purchased bound appellant to deliver to appellees "one 30 H. P. special electric St. Mary's Diesel oil engine, complete, with all necessary fittings and accessories, as per catalogue specifications"; also, one generator and other equipment. A copy of appellant's catalogue was attached to said contract at the time it was executed. Excerpts from said catalogue cover 10 pages of the statement of facts. Said excerpts cover not only the mechanical construction of the engine and the quality of material used in such construction, but also statements concerning the dependability, efficiency, and superiority of such engine when put into operation. We quote briefly from said excerpts in substance, as follows:

"There is combined in said engine the very best and latest in American engineering practice, with such features of European design as have become recognized as standards for engines of the Diesel type. As the result of years of untiring effort and experiment by the Company's engineers, there is built into said engine many distinctive features, which make it the preferred of all Diesel oil engines." (Reference is here made to another page of the catalogue, where 25 special features of claimed superiority are enumerated.)

"Said engine as a power unit is in line with the most advanced engineering practice of the present day. Its operation represents the greatest degree of economy and reliability. * * * It runs practically at constant speed and operates equally well under variable or steady loads. * * * This is the day of service. It is not sufficient for a manufacturer to merely market his product, he must follow up the sale with service. The Company's service has been devised to render the greatest benefit to its customers. Although centered in the home-office, branch offices or distributing points carry a line of repair parts and a service man is constantly available. These engines can be installed for nearly every industry. * * * Economy plus reliable power and freedom from repair costs make such engines the preferred in all ways of all engines. It gives more power for less money. * * * It is ready for action on the minute—when needed. * * * An even flow of dependable power is a distinctive feature of this engine. * * * This remarkable engine is built seemingly never to wear out. * * * Such engines now in operation have been running every day for ten years without the expenditure of a dollar for repairs or the replacement of worn or broken parts."

There was testimony that the operation of said engine was unsatisfactory from its installation; that appellant's representative Strickland, its chief installation and service engineer Rolf, and other experts sent by it were unable to make it operate continuously with any reasonable degree of efficiency. The testimony further showed that after several months of inefficient and intermittent operation, the accidental breaking of one of the parts completely wrecked said engine. There was also testimony tending to show that said engine was so fundamentally defective as to be incapable of efficient operation, and that it was on that account at the very time of its delivery and installation wholly without actual or intrinsic value. The jury found, in substance, that appellant did not deliver to appellee the engine described in the contract of purchase. While the testimony shows that appellant did deliver and install an electric oil engine of its own manufacture, there is further testimony that said engine was so wholly different in quality and operation from the engine it had bound itself to deliver, as reflected by its catalogue, as to be for practical purposes and in legal effect another and different engine from the one appellant contracted to deliver. Our Supreme Court has held, in Jones v. George, 61 Tex. 345, 350, 48 Am. Rep. 280, that under such circumstances there is a breach of the contract of sale.

Appellant, however, contends that the failure of said engine to operate constituted a mere breach of warranty. The contract under which said engine was purchased contains the following:

"The Company guarantees that this engine will develop its rated horse power and will be of standard type in good order and free from ascertainable defects at the time of shipment. The Company will furnish free of charge, new parts to take the place of any parts found defective within 2 years from date of shipment of the engine, natural wear and breakage through carelessness or accidents excepted. Parts claimed to be defective are to be returned to the Company, if requested, in which case the purchaser will pay for transportation. The Company's responsibility is limited to claims made within two years from date of shipment of the engine, and in respect to such claims is limited to making requisite replacement and alteration in the parts not conforming to the guarantee or found defective as aforesaid. It is also agreed that any defect in material and workmanship af any one part shall not condemn the entire engine.

"The Company will not be responsible for or subject to any action for damages or loss due to any failure or imperfection of the engine other than above mentioned."

In the succeeding paragraph of said contract the company guarantees said engine to deliver its full rated horse power and to operate successfully on certain fuels, and further guarantees that fuel consumption will not exceed certain specified amounts. The rules defining the rights of a purchaser under warranty are stated by our Supreme Court in the case of Wright v. Davenport, 44 Tex. 164, 167, as follows: "When there is no fraud, and the warranty goes to the fitness of the article, and it proves wholly unsuitable, or to the identity of the article, and it proves another thing from that for which it was sold, it may be returned upon breach of the agreement or warranty. But if the warranty goes to the degree of fitness or to quality and it proves to be of an inferior quality or fitness, the goods cannot be returned, and the remedy is by action for damages, the measure of which is the difference between the value of the article as it is and as it was represented to be. Thus, if a machine is sold for a particular purpose, and it will perform none of the functions, it may be returned; but if it only perform them badly the remedy is by action for damages."

Appellees tendered to appellant the wrecked engine. The jury, as heretofore shown, found in substance from the evidence that the engine delivered by appellant was so fundamentally defective as to render the same incapable of delivering 30 horse power. The jury further found, in response to issues requested by appellant and adopted and submitted by the court in his main charge, in substance as follows:

(31) Said engine was not of standard type, in good order, and free from ascertainable defects at the time of shipment.

(32) Said engine never developed at any time while being operated by appellees, 30 horse power.

The jury, in response to a number of special issues so requested and adopted and submitted by the court, found in effect that the failure of the engine to operate efficiently was not caused nor contributed to by anything done or failed to be done by appellees. The evidence recited above shows not only a breach of the contract of sale, but, under the authority above cited, also a breach of the warranty contained in such contract, in that said engine wholly failed to perform its warranted functions. Such is the effect of the findings of the jury above recited.

The testimony showed, and the jury found, that said engine was without either market or intrinsic value at the time it was delivered and installed. The testimony further showed that the remains of said engine after it, in the expressive language of the witness, "blew up," were tendered to appellant. Our Supreme Court, in Jones v. George, supra, page 350, on the subject of the proper measure of damage in such cases, said: "While the rights of parties who buy under an express or implied warranty as to quality of thing sold, and of those persons who contract for one thing and another is delivered to them, in reference to remedy in some respects may differ, yet, when rescission has become impracticable, when the thing delivered has been consumed in testing it, it would seem, whether the action be on a warranty or breach of contract, the relief would be the same."

Appellant contends that appellees' measure of damage is prescribed by the terms of the warranty contained in its contract and limited thereby, and that under such terms its obligation and liability to appellees are restricted to the replacement of defective or broken parts. Appellant in said warranty guaranteed that the engine would develop its rated horse power; that it would be of standard type and free from ascertainable defects at the time of shipment. This warranty is general in its nature and refers to the plan of construction of said engine as a whole and its efficiency in operation. Such warranty might be breached notwithstanding none of the several parts of which said engine was composed were defective within the meaning of the subsequent provisions with reference to the replacement of defective or broken parts. The jury, in answer to special issues requested by appellant, found that such provision was breached, as hereinbefore recited. Immediately following the provision of said warranty above discussed is found the provision with reference to replacement of defective or broken parts. The several terms thereof all relate to the matter of defective parts and the replacement thereof, as distinguished from the general plan or type of construction of said engine as a whole and the efficiency of its operation. Said provision supplements but does not supersede or nullify the warranty first recited and hereinabove discussed. Appellant, in line with its theory that its obligation and liability are limited to replacement of parts, requested the court to submit to the jury for determination an issue as to the value of the parts required to be replaced. The court did so, and the jury found in response thereto as follows: (30) The reasonable market value of the parts necessary to replace those broken in the engine was $2,600. This is the exact amount the jury found to be the market value of the engine originally delivered if it had been such an engine as the contract called for. Following both the provisions above discussed, said warranty further provides that appellant shall not be responsible or subject to any action for damages or loss due to any failure or imperfection of the engine other than above mentioned. Since both of the provisions above discussed were thereinbefore mentioned in said warranty, we fail to see how either can be held to have been limited or abrogated by said last-recited provision. This construction is in accord with the accepted rule that all the provisions of a written contract must be construed together to ascertain their true meaning, and that that construction will be adopted which will harmonize and give an interpretation to each clause consistent with the meaning of the rest of the instrument. Hearne v. Gillett, 62 Tex. 23, 26; California State Life Ins. Co. v. Elliott (Tex. Civ. App.) 193 S. W. 1096, 1098, par. 4 (writ refused). Such construction is in accord with the further rule that a contract should be construed most strictly against the party who prepared it and tendered it to the other for acceptance or rejection. Whittington v. Cameron Compress Co. (Tex. Civ. App.) 268 S. W. 216, 218, par. 1, and authorities there cited (affirmed 280 S. W. 527); Western Assur. Co. v. Hillyer-Deutsch-Jarratt Co. (Tex. Civ. App.) 167 S. W. 816, 821, par. 7.

The measure of appellees' damage, under the facts of this case, whether for breach of contract or warranty, was the difference between the reasonable market value of the engine at the time and place of delivery had it

been as contracted for or warranted to be, and its value, if any, as actually delivered, with legal interest, together with such special or consequential damages as appellees may have suffered in connection with their attempt to operate the same. Wintz v. Morrison, 17 Tex. 372, 385, 67 Am. Dec. 658; Aultman & Taylor Co. v. Hefner, 67 Tex. 54, 59, 2 S. W. 861; Danner v. Fort Worth Implement Co., 18 Tex. Civ. App. 621, 45 S. W. 856, 857; D. M. Osborne & Co. v. Poindexter (Tex. Civ. App.) 34 S. W. 299, 301; Ash v. Beck (Tex. Civ. App.) 68 S. W. 53, 55; E. F. Elmberg Co. v. Dunlap Hardware Co. (Tex. Civ. App.) 234 S. W. 700, 703, 704, and authorities there cited. Appellant contends that said rule is inapplicable in this case, because said engine was only one item of a purchase in gross, and no complaint is made of the other articles included therein. Such contention is contrary to the holding of the court in Westinghouse Electric & Mfg. Co. v. Troell, 30 Tex. Civ. App. 200, 70 S. W. 324, 326, par. 3, in which case the Supreme Court refused a writ of error. This case is distinguishable from Swift v. Roach (Tex. Civ. App.) 266 S. W. 846, 849, cited and relied on by appellant. In that case there was no evidence by which the gross price or value of the purchase could be apportioned between the defective separator and the tractor, of which no complaint was made.

According to the rule above stated, appellees, under the findings of the jury in this case, were entitled to recover the reasonable value of the engine if it had been as contracted for and as warranted to be. The jury found such value to be $2,600. They were also entitled to recover the amount paid by them for the larger cylinder, together with the freight paid by them thereon, amounting in the aggregate, as found by the jury, to $353.10. They were also entitled to recover the several sums expended by them in attempting to make said engine operate efficiently. The jury in answer to special issues found that the amount so expended was $361.69 in the aggregate, and that each such expenditure was reasonable and necessary. Said findings aggregate the sum of $3,314.79. Appellees were also entitled to legal interest on said sums from the time the same were expended, respectively, until the time of trial.

The testimony tends to show that the attempted operation of said engine extended over a period of approximately ten months. Appellees seem to have relied on such engine during such time to furnish power to operate their plant. When said engine was not in operation, they purchased electric current from the Texas Power & Light Company. The total amount paid for such current during said period was $706.17. The jury found that such expenditure was reasonable and necessary. The court included said amount in the judgment rendered against appellant. We do not think appellees were entitled to recover said item. Neither appellees' pleadings nor proof showed whether the intermittent operation of said engine during said time was profitable or unprofitable to appellees. Had they shown that the cost of operating the same was greater than the market price of the current produced by said operation, we are not prepared to say they could not have recovered for their loss. In the absence of some complaint on that score, we think we ought to assume that they suffered no loss in such operation. To allow a recovery of the amount expended by them for additional current would be to charge appellant not only with the amounts received from appellees and with the amounts expended by them in attempting to make the engine operate, but also with one of the items of expense incident to the operation of their plant. We have found no authority directly in point, but we think our holding is consistent with the rules announced in the following authorities: Otis Elevator Co. v. Cook (Tex. Civ. App.) 219 S. W. 546, 547; Atlanta Motor Co. v. Duncan (Tex. Civ. App.) 1 S.W.(2d) 749, 751, par. 3; P. B. Yates Mach. Co. v. Groce (Tex. Civ. App.) 297 S. W. 601, 602; Alexander v. Walker (Tex. Com. App.) 239 S. W. 309, 313, 314, par. 12; Hunt County Oil Co. v. Scott, 28 Tex. Civ. App. 213, 67 S. W. 451, 452, 453; Holland v. Western Bank & Trust Co., 56 Tex. Civ. App. 324, 118 S. W. 218, 119 S. W. 694; Fuller v. Cameron (Tex. Civ. App.) 209 S. W. 711, 712; Wimple v. Patterson (Tex. Civ. App.) 117 S. W. 1034, 1036.

For the error of the court in rendering judgment in favor of appellees against appellant for said sum and interest thereon, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

The judgment of the trial court was on our original consideration of this case ordered reversed and the cause remanded for another trial, because the trial court awarded appellees a recovery of $706.17 for electric current purchased by them to run their plant while testing the engine purchased by them from appellant. Appellees assail our holding on this question, but a re-examination thereof has not changed our conclusion with reference thereto. Appellees' motion for rehearing is therefore overruled.

Appellees have asked us, in event we overrule their motion for rehearing, to render a judgment denying them recovery for such item, and to affirm the judgment of the trial court as so modified.

The judgment heretofore rendered by this court is therefore set aside, and the judgment of the trial court is reformed, denying appellees a recovery for said item. Appellees' total recovery was $4,236.76. An item of $215.80 legal interest is included in said

recovery. Deducting from appellees' total recovery the said sum of $706.17, and proportionate interest therein in the sum of $37.85, there remains the sum of $3,492.74 for which appellees were properly awarded a recovery against appellant.

The judgment of the trial court is reformed so as to reduce appellees' judgment against appellant to the said sum of $3,492.-74, with legal interest thereon from the date of the judgment in the trial court; and, as so reformed, the judgment of the trial court is affirmed.